## Ashurst v. Roberts, Admr., et al.

(Decided November 2, 1923.)

### Appeal from Pulaski Circuit Court.

1. Specific Performance—Evidence Held to Show Payments Under Contract.—In an action against the real and personal representatives of a decedent, to compel them to perform decedent's obligations under a contract whereby he purchased plaintiff's land at a judicial sale and agreed to convey to plaintiff on payment of a certain amount, evidence held to show that a considerable amount had been paid by the plaintiff under the contract.

2. Contracts—Forfeitures Not Favored.—Forfeitures of rights under Contracts are not favored.

3. Mortgages—Evidence Held to Show Delivery of Possession was as Security and Not Under Provision for Joint Ownership in Event of Default.—In an action to compel representatives of a decedent to perform a contract whereby decedent purchased property of plaintiff at a judicial sale, under an agreement to convey it to plaintiff, the latter to be entitled to an interest in the property proportionate to payments by him in case of default in payment, evidence held to show that the property was subsequently by plaintiff turned over to the decedent to secure payment of balance due, and not as a joint owner.

DENTON & PERKINS, JAMES DENTON and E. T. WESLEY for appellant.

WM. and B. L. WADDLE for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This action in equity was instituted by Ashurst against the real and personal representatives of John Thurman, deceased, shortly after his death, to compel them to perform Thurman's obligations under the following contract, with which Ashurst alleged he had fully complied:

"THIS AGREEMENT, made and entered into this August 5th, 1912, between J. H. Thurman and Rufe Ashurst, WITNESSETH: That, whereas, the property of the Pitman Creek Coal Company was, on the — day of ———, 1911, sold by the commissioner of the Pulaski circuit court at public auction to the highest bidder, and, whereas, the said Thurman bid off said property for the benefit of said Ashurst, and has since, to-wit, on March 1st, 1912, paid the amount of $1,546.12, in full settlement of all claims against said company, and having himself a prior lien on a portion of said property to an agreed amount of $1,200.00, and insurance of the amount of $68.88, making a total of $2,815.00.

"Now, therefore, that said Ashurst may acquire said property, as per agreement, it is agreed that said Ashurst shall take charge of said property and use and manage it to the best advantage, and pay to said Thurman an amount equal to forty cents (40c) for each ton of coal mined and sold by him, which forty cents per ton shall be credited on the above total amount until it shall amount to nine hundred dollars, ($900.00), with interest from March 1st, 1912, when said Thurman will convey to said Ashurst, on demand, the railroad and all its equipment, shop, cars, scales, locomotives, etc., and when said 40c per ton shall amount to the full sum, to-wit, $2,815.00, with interest from March 1st, 1912, then said Thurman will convey the remainder of said property, to said Ashurst, it being understood and agreed that said Ashurst now has an interest in the railroads and equipments equal to its full value less nine hundred dollars ($900.00), and interest from March 1st, 1912.

"Said Ashurst agrees that he will at all times keep a sufficient amount of coal either at the mine or creek to supply the demand, except in case of strikes, floods or unavoidable accidents, and should he fail to do this after a reasonable time, or to pay to said Thurman 40c per ton for all coal sold, said Thurman shall take charge of said property, and this agreement shall become void, but said

Ashurst shall be entitled to an interest in said property proportionate to the amount paid by him up to this time, on the above valuation, to-wit, $2,815.00.

"This agreement shall bind the heirs, administrators, executors or assigns of both parties.

"In testimony whereof witness our hands the day and the year first above written.

"RUFE ASHURST,
"J. H. THURMAN."

The defendant, denying Ashurst's alleged performance of his part of the contract, averred by way of counterclaim that after his breach of same, Thurman had acquired possession of and title to the property under the clause in the contract which rendered it void, and that plaintiff had no further interest in the property; and that in any event, upon a settlement of accounts therein set up, plaintiff was indebted to them and they had a lien upon the property for a larger sum than the original indebtedness, which they sought to enforce if denied title to the property.

These issues were completed by appropriate pleadings, and, upon a trial, the petition was dismissed.

Plaintiff owned the involved property before Thurman purchased same for him at a decretal sale thereof to pay plaintiff's debts, and the contract is conclusive evidence that the conveyance by the master commissioner was considered and treated by the parties as simply a mortgage on the property to secure Thurman's own indebtedness and the sum he had advanced to discharge other claims against the property, aggregating $2,815.00; and, that by failing fully to repay Thurman in a reasonable time, Ashurst should not lose the whole property if he had paid anything on his indebtedness, but that in such event "Ashurst shall be entitled to an interest in said property proportionate to the amount paid by him up to this time on the above valuation, to-wit, $2,815.00."

After Ashurst had operated the property with indifferent success for three years, Thurman, in June, 1915, rented same to H. M. Warren and son, and collected the rents therefrom until his death in the following December. Evidently this was done with Ashurst's consent, but the evidence shows quite clearly that neither Thurman nor Ashurst regarded it as terminating the latter's interest in the property. Just what the parties intended thereby is not fully explained, since Thurman is dead, and Ashurst could not testify. But despite his inability

to testify, he has proven the following payments to Thurman between March 1, 1912, and the latter's death, and for which he claims he is entitled to credit upon a settlement of accounts:

| | |
|---|---:|
| Land sold by Ashurst and proceeds paid to Thurman | $25.00 |
| Rails sold by Ashurst and proceeds paid to Thurman | 464.12 |
| Coal sold in 1913, and proceeds paid to Thurman | 100.00 |
| Timber sold off of the place, proceeds paid to Thurman | 155.00 |
| Checks from Ashurst to Thurman, aggregating | 426.94 |
| Deposit by Ashurst to Thurman's credit, March 15, 1912 | 325.00 |
| Horse delivered to Thurman by Ashurst | 75.00 |
| Rent collected from Warren and son | 600.00 |
| A total of | $2,171.06 |

Eliminating such of these items as were possibly paid after June, 1915, and after Thurman rented the property to the Warrens, it is yet clear, if the remaining items were paid on this indebtedness, that over and above interest on the $2,815.00 and taxes paid by Thurman, plaintiff had paid him a considerable sum, as much as $900.00 or $1,000.00, on the original debt of $2,815.00. There seems to us no reason whatever to deny that all of such remaining items were paid to Thurman for credit on this debt, unless it be the $75.00 for the horse and the $325.00 deposited to Thurman's credit on March 15, 1912, and even if these two items should be eliminated, Ashurst had reduced his debt some $500.00 or $600.00 by June, 1915.

It is therefore clear that Ashurst still had an interest in the property when, presumably, he surrendered its management to Thurman.

But we feel quite sure the $325.00 item should not be eliminated because of the fact it was paid before the contract was drawn, as appellees argue, since the contract shows very clearly that it stated the accounts as of March 1, 1912, and that this item was not included therein. There is no evidence about the horse except as to its value and that Thurman got it from Ashurst, but defendants did not attempt to explain any of these transactions, or to prove Thurman ever paid for the horse, or that Ashurst owed him anything other than this debt, and we think it only reasonable to presume that this horse

and all the other items listed above were turned over to Thurman for credit on the debt, as assuredly most of them were.

The next question presented then is, whether the parties became joint owners, under the terms of the contract, when Thurman took possession and rented the property in June, 1915, or, as claimed by Ashurst, Thurman simply assumed the management to satisfy his claim more speedily than was being done under Ashurst's management.

It is shown that subsequent to that time Ashurst, at intervals, inspected Warren's books to ascertain the state of accounts and payments being made to Thurman, and that both he and Thurman asserted ownership of the property, and tried to sell it to the Warrens. If this were all of the evidence on this point, we possibly might assume they were joint owners, as provided in the contract. But forfeitures are not favored, and plaintiff proved by John E. Bash, a friend of decedent who has no apparent interest in this litigation, that just a short time before Thurman's death he told him Ashurst owned the property and had paid him all but about $1,600.00 or $1,700.00 of his debt, and that "if he continued as he was, he would soon pay out."

This statement not only refutes the idea that Thurman had taken charge of the property under a forfeiture, but tends strongly to sustain Ashurst's claim that the items listed above were proper credits on the contract debt. Charging Ashurst with his debt and interest to Thurman's death, which occurred about December 31, 1915, and with the amounts paid by Thurman for taxes and scales, the sum is $3,675.00. Crediting him with the above items, with interest on such of them as the time of their payment is established, the balance due Thurman when he died was about $1,425.00, or only $175.00 less than Thurman claimed to Bash a month or two before his death.

It is not shown, however, when or how the $600.00 was paid by the Warrens, as they could not find their records and only stated the total payments to him, and as some part of this sum may have been, and probably was, paid to Thurman after his statement to Bash, even the small discrepancy probably is not real.

We therefore conclude that at Thurman's death, Ashurst owed him $1,425.00; that the property involved was in lien to secure its payment, and that Thurman's

administrator should have been awarded a judgment and order of sale for that amount with interest from December 31, 1915, less a credit of $62.50 which defendants admit was paid to them for timber sold off the land after Thurman's death. In addition, the conveyance of a part of the property to appellees, Warren and Hughes, since the institution of the action should have been cancelled, since there was no denial of the amended petition filed for that purpose by either the original defendants or Warren and Hughes, who were thereby made parties and served with process.

Wherefore the judgment is reversed, and the cause remanded with directions to enter a judgment in accordance herewith.