## Ashurst v. Cooper's Administrators.

(Decided February 22, 1927.)

### Appeal from Pulaski Circuit Court.

1. Mines and Minerals—Question as to Amount of Coal Taken from Mine, Under Conflicting Evidence, is for Jury, in Action for Trespass.—In action for damages for innocent trespass in removing and selling coal from plaintiff's coal mine, question as to amount of coal taken is for jury, where evidence is conflicting.

2. Mines and Minerals—Amount of Damages to be Allowed for Taking Coal from Plaintiff's Mine Held for Jury Under Proper Instructions.—In action for innocent trespass in taking coal from plaintiff's mine, question as to amount of damages to be awarded for coal taken held for jury, under proper instruction of court fixing measure of damages.

3. Mines and Minerals—Measure of Damages for Innocent Trespass in Taking Coal from Mine Held Value of Coal in Place Where Taken.—In action for trespass for taking coal from plaintiff's mine, amount of damages, where trespass was innocent, held value of coal in place so taken.

4. Mines and Minerals—Value of Coal Taken from Mine by Innocent Trespasser is Determined by Customary Royalty Paid for Mining Privileges in Vicinity of Mine.—Value of coal taken from mine by innocent trespasser is determined by usual and customary royalty

paid for mining privileges under like conditions, in vicinity of mine at time of trespass.

5. Mines and Minerals—Evidence that Cost of Mining Coal Taken by Innocent Trespasser Exceeded Market Price Held Inadmissible. —In action for innocent trespass for taking coal from mine, evidence introduced to establish that cost of mining coal taken by alleged trespasser exceeded price received for it on market held improperly admitted; measure of damages being customary royalty paid for mining privileges in vicinity at time of trespass.

6. Mines and Minerals—In Action Against Innocent Trespasser Taking Coal from Mine, Submitting as Measure of Damages Profit on Sale Over Cost of Production Held Error.—In action against innocent trespasser taking coal from mine, instruction that value of coal in mine must be determined from whether coal could be sold at profit above cost of production held error, as proper rule for arriving at value of coal is by ascertaining usual royalty paid for mining privileges in vicinity at time of trespass.

7. Witnesses—Plaintiff, Suing for Trespass of one Taking Coal from Mine, Could Testify as to Usual Royalty Paid for Mining Privileges in Vicinity, Though Trespasser Died Prior to Trial. —Where, in action for trespass for taking coal from plaintiff's mine, defendant died before trial, and was represented by administrators, plaintiff could nevertheless testify as to usual and customary royalty paid for mining privileges in vicinity at time of trespass, as such testimony did not concern any transaction with deceased.

8. Mines and Minerals—Refusal to Direct Verdict in Favor of Defendant, Sued for Taking Coal from Mine, on Ground that Plaintiff Failed to Prove His Title Held Not Error Under Evidence.—In action for trespass for taking coal from plaintiff's mine, refusal to direct verdict in defendants' favor on ground that plaintiff failed to show title in himself held not error, where evidence indicated complete chain of title from common grantor.

9. Mines and Minerals—In Controversy Over Title Claimed by Litigants Under Common Grantor, Plaintiff was Not Required to Trace Title Beyond Common Source.—Where, in action for trespass by taking coal from mine, litigants both claimed title from common grantor, plaintiff was not required to prove chain of title existing prior to title of common grantor.

10. Vendor and Purchaser—Defendant Sued for Trespass was Required to Show Absence of Actual Notice of Plaintiff's Unacknowledged Deed to Prove Himself Bona Fide Purchaser Without Notice (Ky. Stats., Section 500).—In action for trespass by taking coal from plaintiff's mine, refusal to direct verdict on ground that alleged trespasser established status as bona fide purchaser for value without notice held not error, though plaintiff claimed under unacknowledged deed, record of which did not give constructive notice under Ky. Stats, section 500, where defendant failed to establish that he had no actual notice.

11. Vendor and Purchaser—Where Title of Plaintiff, Suing Defendant for Trespass of Coal from Mine, was Outstanding, Burden was on fendant to Prove Himself Purchaser Without Actual or Constructive Notice.—In action for alleged trespass in taking coal from mine, where plaintiff held under deed in chain of title not constituting constructive notice, defendant had burden to prove himself purchaser without notice, actual or constructive, of outstanding title.

DENTON & PERKINS and M. L. JARVIS for appellant.

C. L. TARTAR for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

Appellant, Rufe Ashurst, instituted this action at law in the Pulaski circuit court to recover from J. S. Cooper $3,313.96, the amount alleged to be due as damages for trespass committed by the latter by entering upon and into the mineral estate of the former and mining, removing and selling a lot of coal therefrom and converting its proceeds to his own use. Appropriate pleadings made the issues on the questions hereinafter discussed, and the trial before a jury resulted in a verdict and judgment for defendant. It may be stated that before the action came on for trial the defendant, J. S. Cooper, died and the action was revived in the name of his personal representative, the appellee herein.

Appellant urges as reasons for reversing the judgment errors in the admission and rejection of testimony and in the instructions given. The action seems to have been treated by both parties and the trial court as one to recover damages resulting from an innocent trespass as distinguished from a trespass willfully and knowingly committed. In that state of case only two issues need be submitted to the jury. Unless the parties are agreed or if the evidence is conflicting as to the amount of coal taken the jury, of course, must determine whether any and if so how much coal was taken. Further, guided by a proper instruction fixing the measure of damages, the jury will be required to fix the amount, if any, to be awarded as damages for the coal, if any, so taken. The value of the coal in place so taken, in a case of innocent trespass, is the amount of damages, and the rule for determining that value uniformly adhered to by this court is to have the jury determine from the evidence the usual

and customary royalty from mining privileges in the vicinity of the mine at the time of the trespass. These questions were fully discussed in the recent opinions of this court in Middle Creek Coal Company v. Harris, et al., 217 Ky. 620, 290 S. W. —, and in Falls Branch Coal Company v. Proctor Coal Co., 203 Ky. 307, 262 S. W. 300. Many other opinions of this court on these questions may be found quoted from and referred to in the two opinions, *supra.*

The erroneous misconception of the principles of law applicable to the issues and facts hereof upon the part of the trial court is indicated by the following statement made from the bench to the attorneys, but not in the hearing of the jury, after both parties had announced the close of the evidence:

"I have permitted both sides to offer proof as to whether or not the mines referred to in the evidence could be operated at a profit or at a loss. I will now permit both sides to produce evidence, the plaintiff any evidence he may desire to offer in regard to the amount of profits or loss at which the mines can be operated, and the other side may introduce testimony on the same question. Examination of the petition shows that plaintiff has sued for the value of the coal in the mine, and not for royalties. The issue, therefore, is the value of the coal taken, in the mine, at the time taken.

"There is no evidence before the jury as yet tending to show the value of the coal in the mine, or the market value of the coal at the mines. The cost of production may be shown together with the market price. The difference, if any, above the cost of production being of course the value of the coal in the mines."

Following this additional evidence was introduced for appellee to establish that the cost of mining the coal taken by Cooper exceeded the price received for it on the market, supplementing similar evidence along that line already offered, to all of which appellant objected and excepted.

Over appellant's objection the trial court then gave this instruction:

"If the jury believes from the evidence in this case that the coal in the mine referred to in the evi-

dence had some value as it lay in the mine; that is, that it could by careful, prudent operation of the mine be taken from said mine and sold for a profit above the cost of production, then you will find for the plaintiff, Rufe Ashurst, said value according to the evidence, if anything, of the amount of coal which you may believe from the evidence was mined from said mine by the defendant, J. S. Cooper, his agent and employees, not exceeding the sum of $3,313.06, the amount sued for, but unless the jury shall so believe that said coal had value in the mine as defined in the first part of this instruction, your finding shall be for the defendant.''

The trial court's conclusion as indicated by the statement quoted and instruction given that the value of coal in the mine must be ascertained by the jury finding from the evidence whether it could be profitably mined, and if so find as damages the profit that could be made, and if not to find nothing, in the light of the opinions to which we have referred was entirely erroneous. The rule prevailing in this jurisdiction for arriving at the value of coal in place is by ascertaining the usual and customary royalty paid for mining privileges under like conditions in the vicintiy of the mine at the time of the trespass.

It follows then that all the evidence as to the cost of mining the coal taken by Cooper and as to whether that was greater or less than the price received for it when marketed was incompetent and appellant's objection to it should have been sustained. The method of ascertaining the value of the coal in the mine has been indicated herein, and upon another trial the introduction of evidence will be confined to the issues indicated. Appellant was a competent witness on the question of the usual and customary royalty paid for mining privileges in the vicinity of the mine at the time of taking of the coal, because, though testifying for himself, he was not testifying ''concerning any verbal statement of or any transaction with or any act done or omitted to be done'' by J. S. Cooper, his adversary, who was dead when he testified. Hence, it was error to sustain the objection to this testimony from him.

Appellee insists that he was entitled to a directed verdict at the close of the evidence herein, because appellant failed to show title in himself; and because his in-

testate appears to have mined the coal while in possession as a purchaser for a valuable consideration without notice of appellant's outstanding claim. The parties herein stipulated and agreed that they both claim title to the land in controversy from a common source and remote grantor, J. H. Thurman, and that the record in the case of Rufe Ashurst v. V. D. Roberts, et al., heard and determined in the Pulaski circuit court, and thence appealed to this court, together with the opinion of this court in the case found in 200 Ky. at page 755, might be considered as offered and read in evidence upon the trial hereof, and that the title papers of both parties might be considered as offered and read in evidence to the jury. Under this stipulation, and in view of the fact that both parties trace their title to a common source, it was unnecessary for either party to read in evidence any of their chain of title back of the common remote grantor, J. H. Thurman. The argument for appellee that under the opinion of this court, in Ashurst v. Roberts, 200 Ky. 755, 255 S. W. 528, it was held that appellant did not have the title of the land in question is incorrect. It was held in that opinion that the deed executed on the 14th day of March, 1912, by J. R. Cook, master commissioner of the Pulaski circuit court, to J. H. Thurman for the lands therein described, which had been sold in the action of W. Boyd Morrow, trustee, etc., plaintiff, v. The Pitman Creek Coal Company, etc., defendants, in view of the contract entered into between J. H. Thurman and Rufe Ashurst, the effect of which was before this court for consideration, was merely a mortgage to secure Thurman in the payment of certain indebtedness owing to him by Ashurst, and that under the deed, in view of the written agreement between the parties, Thurman merely had a lien upon the land therein described to secure him in the payment of the balance due under the contract found by that opinion to be $1,425.00, with interest, less a credit of $62.50. It was further held in that action that the conveyance of a part of the property to Warren and Hughes should have been cancelled. The judgment from which that appeal was prosecuted was reversed, with directions that a judgment in conformity with that opinion be entered. The chain of title in appellant from the common remote grantor is found to be complete, and the contention that appellee's motion for a peremptory instruction should have prevailed because appellant failed to show title in himself can not be sustained.

Appellee's further contention that he was entitled to a directed verdict because the record without contradiction establishes that he was a *bona fide* purchaser for value without notice of appellant's claim to ownership can not be sustained. This contention grows out of the fact that in the action of W. Boyd Morrow, trustee, etc., plaintiffs, v. The Pitman Creek Coal Company, etc., defendants, then pending in the Pulaski circuit court, the land, from which the coal mined by J. S. Cooper was taken, which is in controversy herein, was sold by the master commissioner. J. H. Thurman bid the property in at the sale; the sale was reported as having been made to him and confirmed; and the deed was made and delivered to him and recorded. The contract between J. H. Thurman and appellant, Rufe Ashurst, the effect of which was considered and determined by this court in Ashurst v. Roberts, *supra,* though in writing and signed by the parties, and though actually recorded in the county court clerk's office of Pulaski county, was never acknowledged by the parties; and consequently under the provisions of section 500, Kentucky Statutes, the fact that it was recorded was not sufficient to charge J. S. Cooper with notice thereof. It is stipulated that no *lis pendens* notice was ever filed by appellant, Ashurst, when or after he instituted his action against Roberts, etc., *supra.* Appellee by amended answer herein pleaded that he purchased the tract of land from which he mined the coal in controversy for value and without notice of appellant's rights therein growing out of the contract between him and Thurman above referred to. The difficulty in sustaining that plea arises from the fact that on that question the burden was upon him to establish by proof that his purchase was without notice, actual or constructive, of appellant's outstanding superior title, and there is a total failure of proof that he did not have actual notice. In addition to this the record title was in J. H. Thurman. Appellee under the stipulation that the title papers might be considered as offered and read in evidence has had copied and filed with the record herein the deeds constituting his alleged chain of title from himself through his predecessors in title to the common remote grantor. Among them is a deed from Mae Thurman Roberts, V. D. Roberts and Susan Emma Thurman to Joe S. Warren and Tom Hughes. The record contains no evidence as to how the parties grantor in that

deed ever acquired the title of the land in question. If the record title was in J. H. Thurman under the deed from the commissioner to him of March 14, 1912, there is no evidence as to how the title ever came to rest in the parties grantor in the deed from Roberts and Thurman to Warren and Hughes. In addition this deed seems to be the one referred to in the opinion of Ashurst v. Roberts, *supra*, which was thereby directed to be cancelled. For these reasons appellee's contention that he was entitled to a directed verdict upon the theory that his intestate was an innocent purchaser for value without notice cannot be sustained.

For the reasons indicated the judgment herein is reversed and cause remanded for further proceedings consistent herewith.