## Ashurst v. Thurman's Administrator et al.

(Decided November 25, 1930.)

W. N. FLIPPIN for appellant.

B. J. BETHURUM and JOHN S. CARROLL for appellees.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

On the 5th day of August, 1912, J. H. Thurman entered into a contract whereby it was agreed that Thurman had purchased certain coal-producing property and equipment necessary for producing coal for the benefit of appellant, and that, when the appellant should pay a total amount of $2,815, Thurman would convey the property to him. Under this agreement appellant took possession of the property and operated it for some time.

Thurman died, and a disagreement arose between his representatives on one side and appellant on the other. Appellant instituted a suit to compel a specific performance of the contract entered into by Thurman. The defendants in that action denied that appellant had performed his contract, and alleged that Thurman had acquired possession of the property and title thereto under a clause in the contract which rendered it void if appellant should not perform his part of it. The result of that action in the circuit court was a judgment in favor of the defendants, but, upon an appeal to this court (Ashurst v. Roberts, 200 Ky. 755, 255 S. W. 528) the judgment was reversed. This court found that at the time of the death of Thurman appellant was indebted to him in the sum of $1,362.50, after allowing certain credits. A part of the property had been conveyed to Warren and Hughes after Thurman took possession of it. The opinion of this court was to the effect that the deed to Warren and Hughes should be canceled, and that appellant was entitled to the property with the lien against it in favor of Thursman's representatives for the amount unpaid. When the mandate was filed in the lower court, the former judgment dismissing the petition was set aside, whereupon, appellant moved for a writ of possession in his favor against those in possession of the property. He then came into court and filed an amended petition in which he sought to recover the possession of the property from certain named parties whom he alleged were withholding it. The representatives of Thurman had sought a judgment enforcing the lien against the property and obtained the relief sought, and a sale of the property was ordered. It was sold by the master commissioner and the purchase price in the aggregate was $1,250. The appellant filed a supplemental petition in which he made allegations tending to show that the representatives of Thurman, while in possession of the property and before it was sold to satisfy the lien, had unskillfully operated the mines in such a way as to cause the roof to fall in and close up the entry rendering it possible to mine certain quantities of the coal. He also alleged that they had mined large quantities of coal, and that he was entitled to recover the value thereof. He also alleged that certain mining and railroad equipment had been disposed of by the representatives of Thurman; and finally, on motion, after the pleadings had been made up, the

cause was referred to the master commissioner to take proof and report on three particular matters:

"(1) The quantity and value of the mining and railroad equipment, if any, disposed of by the defendant from and after the 19th day of April, 1916, and until said property was surrendered by them. (2) The quantity and amount of coal taken from the land in controversy, and the quantity, if any, lost or damaged by improper mining, and any damage or loss of coal, if any, by reason of improper mining, if any, and the value of the royalty on all such coal taken or lost by improper mining methods. (3) He will also hear proof and make his findings, if any, of credits, if any, to which the defendant may be entitled on account of the operation of said mine, their improvements or otherwise to which the defendant may be entitled. In his report the said commissioner will make full statement in detail of his findings accompanied by the evidence upon which said findings are made."

The master commissioner took proof and made a carefully prepared report in which he itemized the amounts which, in his judgment, appellant was entitled to recover. He fixed the value of sixty-two ton railroad rails at $1,608.51; junk $20; 3,600 pounds of old spikes, $72; engine, $700; three 100-bushel coal cars, $225; one 100-bushel coal car $50; nine small cars, $135; tools, machinery and other equipment, $300. These findings were made under the first order of reference set out above. Under the second order of reference he reported that appellant was entitled to recover a royalty of 3 cents per bushel on 90,000 bushels of coal which had been actually mined and disposed of by Roberts, the representative of Thurman, making a total of $2,700. He found that the damage to the mine proper caused by closing of the entry and the loss of coal by reason thereof amounted to $1,000 after taking into consideration that Roberts had expended $500 in making another entry. Under the third order of reference the commissioner found nothing for the defendant, but he did find that appellant sold 125 tons of coal which was mined by the representatives of Thurman, and that he realized from the sale the sum of $125.

The defendants filed exceptions to the report on the ground that the findings of the commissioner that the

value of the sixty-two tons of railroad rails was $1,608.51 was grossly excessive and not supported by the evidence, and the same exceptions were made to the findings of the commissioner that the value of the 3,600 pounds of old spikes was $72, or that the value of the engine was $700. These exceptions related to the first order of reference. The defendants further excepted to the findings of the commissioner under the second order of reference that 90,000 bushels of coal had been mined, and disposed of, and to the finding that the value of the royalty was 3 cents per bushel. They further excepted on the same grounds to the findings of the commissioner that $1,000 should be allowed for loss of coal caused by the closing of the entry.

The appellant also filed exceptions on the grounds that the amount allowed by the commissioner on each item was too small and was flagrantly against the evidence.

The chancellor, after a consideration of the record, sustained the exception of the appellees to the valuation of the sixty-two tons of railroad rails as fixed by the commissioner and reduced the value of $1,240. He overruled the exceptions to the findings of the value of the old spikes and fixed it as $72, but sustained the exceptions to the value of the engine and fixed the value therof at $200 instead of $700. He overruled the exceptions to the valuation fixed on other items under the first order of reference. The valuation fixed by the court on the items mentioned in the first order of reference was $2,072.

On the exception to the amount of damages allowed for the closing of the old entry the court found that the old entry claimed to have been destroyed had some value, and he fixed this value at $500, which he deducted from the $1,000 which the commissioner had allowed for damage growing out of the closing of the entry and rendering inaccessible certain quantities of coal.

The ruling of the court on exception No. 2 by the appellees is not clear. In the judgment we find this language: "Defendant's exception No. 2 is sustained, authorized the amount allowed by the commissioner to which ruling plaintiff excepts."

Exception No. 2 was to the finding by the commissioner that 90,000 bushels of coal had been mined, and that three cents per bushel was a reasonable royalty. It appears from the judgment itself that the exception was sustained and the same amount allowed by the commis-

sioner was approved. The final judgment, after passing on all of the exceptions, is that the appellant recover $2.072, with interest from October 7, 1916, to December 7, 1927, and the further sum of $500 for damage to entry, and the judgment then fixes the total amount of recovery in favor of appellant at $3,960.24 subject to certain credits. The difference between $2,072 and $500, or a total of $2,572, and the $3,960.24 appears to be made up of interest calculated on these two amounts. If this be true, the court allowed nothing as royalty on the coal which it was alleged had been taken out and sold by appellees.

We deem it unnecessary to go into details about the value fixed on separate items by the court below. It is sufficient to say that there was evidence to support the findings of the commissioner as well as evidence to support the findings of the chancellor. The record is not in good condition, and, giving some weight to the judgment of the chancellor, we have concluded that his judgment should not be disturbed on the items mentioned.

Counsel for appellant complains because the court did not allow a greater sum for damages growing out of the destruction of the entry. The destruction of the entry could have resulted in damage only to the extent that it made it impossible to take out certain quantities of coal which could not be reached through other entries. Certain coal appears to have been left in the mine, and there is evidence that there was coal ahead of the entry which could never be taken out, but the evidence is fragmentary and inconclusive as to the quantity of the coal. The allowance of $500 was arrived at by first allowing $1,000 damages caused by the destruction of the entry and then deducting therefrom $500 brought about through the enhancement of the value of the property in the construction of another entry. Taking the pleadings, reports, and orders as we find them, we have reached the conclusion that the allowance made by the chancellor was to take care of any damages by reason of coal "wrapped up" and made impossible to mine by reason of the destruction of the entry.

Appellant also complains that there should have been a recovery for coal actually removed from the land by appellees while they were in possession of it, and there is proof that coal was removed, and the appellant was entitled to a reasonable royalty value on such as was removed. But we have searched the record in vain to

find some measure whereby the amount of coal removed could be determined, but we can find no evidence on which to base a finding. The record is vague and uncertain on this point, and, with the aid of excellent briefs, we are unable to find anything which will enable the court to do more than guess at the quantity of coal removed. The briefs filed on behalf of appellant and appellees are models in that they present to the court everything that can be obtained from the record, but, after a careful checking of the briefs with the record, we are unable to find anything on which a judgment for coal removed could be predicated. The case has been on hand a long time, and the chancellor appears to have exercised a sound judgment in reaching his conclusions, and, while it may be that appellant was entitled to something for coal removed, or for coal the mining of which was rendered impossible, yet we can find no reason to disturb the judgment rendered below.

Judgment affirmed.