ROSE, Appellant, *v.* SULLIVAN, Respondent.

(No. 4,422.)

(Submitted November 10, 1919. Decided November 18, 1919.)

[185 Pac. 562.]

*Elections—Office and Officers—Constitution — County Auditor — Women — Qualifications for Office — Woman's Suffrage Amendment—Effect—Statutes and Statutory Construction.*

Elections—Office and Officers—County Auditor—Women—Qualifications for Office—Constitution.

1. Since the adoption of the suffrage amendment to the Constitution (section 2, Article IX), a woman, otherwise qualified, is entitled to hold the office of county auditor, though the statute creating it (Laws 1891, p. 227) declared that a "male person" should be elected to office.

[As to the eligibility of woman to public office, see notes in 21 Ann. Cas. 403; Ann. Cas. 1915A, 594.]

Statutes and Statutory Construction—Surplusage.

2. Words inserted in a statute through inadvertence should be treated as surplusage and disregarded.

[As to changing, supplying and eliminating words in statute to correct obvious error, see note in 1 Ann. Cas. 752.]

Office and Officers—County Auditor—Women—Qualifications for Office—Constitution—Woman's Suffrage Amendment—Effect.

3. Upon adoption of the suffrage amendment to section 2, Article IX, of the Constitution, the sex attribute was eliminated as a qualification to vote, and by section 11 of that Article as a qualification to hold any office under the Constitution or laws of the state, woman being thus placed upon a plane of absolute equality with man, touching their political rights and privileges.

*Appeal from District Court, Silver Bow County; John V. Dwyer, Judge.*

NELLIE SULLIVAN was declared elected to the office of county auditor of Silver Bow County, and Ludwig Rose, her competitor, instituted a contest. From a judgment dismissing the contest, the contestant appeals. Affirmed.

*Mr. James H. Baldwin,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Joseph R. Jackson, Mr. E. F. O'Flynn* and *Mr. N. O. Rotering,* for Respondent, submitted a brief; *Mr. Rotering* argued the cause orally.

We contend that by judicial construction the word "elector" should be substituted for the words "male person" in section 3101 of the Revised Codes. If that is not done, that section is unconstitutional. The courts will be slow to declare any statute unconstitutional unless the statute is clearly invalid. And our court has held that the section was valid. (*State ex rel. McGinniss* v. *Dickinson,* 26 Mont. 391, 394, 68 Pac. 468.)

Where a condition presents itself, such as is here presented, the courts have never hesitated by statutory construction to read into the statute the words that were intended to be used by the legislature in passing the statute. (*Palms* v. *Shawano Co.,* 61 Wis. 211, 21 N. W. 77; *Abernethy* v. *Board of Commrs.,* 169 N. C. 631, 86 S. E. 577; 26 Am. & Eng. Ency. of Law, 2d ed., 653; *Riggs* v. *Palmer,* 115 N. Y. 506, 12 Am. St. Rep. 819, 5 L. R. A. 340, 22 N. E. 188; *State* v. *Chicago etc. R. Co.,* 38 Minn. 281, 37 N. W. 782; *Young* v. *Regents of University of Kansas,* 87 Kan. 239, Ann. Cas. 1913D, 701, 124 Pac. 150; *James* v. *United States Fidelity & Guaranty Co.,* 133 Ky. 299, 117 S. W. 406; *Commonwealth* v. *International Harvester Co.,* 131 Ky. 551, 133 Am. St. Rep. 256, 115 S. W. 703; *Goodpaster* v. *United States Mortgage Bond Co.,* 174 Ky. 284, 192 S. W. 35, 37; 36 Cyc. 1102, 1116, 1142, 1145, 1164.) Hence, if the statute is valid, it must be given a construction which is reasonable. If the legislature did not intend to use the word

"elector" when it used the words "male person," then, a woman, though an elector, would not be qualified, but any alien male, no matter of what country he might be a citizen or subject, if of the required age and having resided for several years in any county in the state, would be qualified to fill the office of county auditor. This was never intended by the legislature and no court will hold that such was the intention, because, if it had been, the section would be invalid. A case somewhat in point is the case of *State ex rel. Fenner* v. *Keating,* 53 Mont. 371, 163 Pac. 1156.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

As a result of the election held in November, 1918, Nellie Sullivan was declared elected to the office of county auditor of Silver Bow county. Ludwig Rose, her competitor, instituted a contest, and has appealed from a judgment dismissing it. There is presented the single question: Can a woman, otherwise **[1]** qualified, be denied the right to hold the office of county auditor because of her sex?

The office of county auditor is not mentioned in the Constitution. It was created by an Act of the legislative assembly approved March 7, 1891 (Laws of 1891, p. 227). Section 2 of the Act provides, among other things, "There shall be elected * * * some male person to serve as county auditor," *etc.* The Act has been brought forward into the later compilations of the laws, and section 2 above is now section 3101, Revised Codes. At the time the statute was enacted, and thereafter, until the suffrage amendment was adopted in 1914, the Constitution of this state (sec. 2, Art. IX) prescribed the qualifications necessary to entitle a person to vote at general elections and for state officers, as follows: A male; of the age of twenty-one years or over; a citizen of the United States; a resident of this state for one year immediately preceding the election at which he offers to vote, and of the town, county or precinct for such time as the law might prescribe. The ex-

ceptions are not material here. Section 10 of the same Article of the Constitution provided: "Women shall be eligible to hold the office of county superintendent of schools or any school district office."

Section 11 provides: "Any person qualified to vote at general elections and for state officers ·in this state, shall be eligible to any office therein except as otherwise provided in this Constitution, and subject to such additional qualifications as may be prescribed by the legislative assembly for city offices and offices hereafter created." Additional qualifications are prescribed for state senator, certain elective state officers, district judge, member of constitutional convention, and county attorney, but no other qualifications are imposed by the Constitution for other state or county officers. In other words, prior to the adoption òf the suffrage amendment, to qualify a person to hold any county office, other than county superintendent of schools, such person must have been qualified to vote at general elections and for state officers; that is to say, such person must have been a male, of the age of twenty-one years or over, a citizen of the United States, a resident of this state for a year immediately before the election, and of the town, county or precinct for such time as the law might prescribe.

Since the language of sections 2 and 11, Article IX above, is mandatory and prohibitory, it was beyond the power of the legislature to render a person eligible to hold a public office who did not possess all the qualifications prescribed by the Constitution for such office, but it was left free to attach additional qualifications to the incumbent of the office of county auditor—an office created after the Constitution was adopted.

But by the use of the word "male" in the statute, the legislature could not have intended to prescribe an additional qualification for the office of county auditor, for the Constitution had already made the sex attribute male, an indispensable qualification to hold any county office, whether created by the Constitution or by statute, except the office of county superintendent of schools.

The words "additional qualifications" were used in section 11, Article IX, advisedly. They mean some qualifications added to those already enumerated in the Constitution. They never did mean a repetition of some qualification already required. The meaning of the language is too plain to admit of further discussion.

It is probable that the word "male" was inserted in the [2] statute through inadvertence, and, if so, should be treated as surplusage and disregarded. (*Shapard* v. *Missoula,* 49 Mont. 269, 141 Pac. 544.) Its presence adds nothing to the meaning of the Act. If in enacting the statute the legislature had substituted the word "female" for the word "male," the Act would have been unconstitutional, for women were then not qualified to vote at general elections and for state officers, and therefore were not qualified to hold the office of county auditor.

If the word "male" had been omitted altogether, the statute would have meant just what it did mean with the word included, for only male persons were then qualified to hold the office. If the statute had read, "There shall be elected some person to serve as county auditor," *etc.*, the constitutional qualifications would have been read into it, thereby completing the Act.

If the word "male" was inserted designedly, it could not have meant anything but a general elector—a person qualified to vote at general elections and for state officers, for no one else was eligible to the office of county auditor at that time. If it was inserted intentionally for the purpose of emphasizing [3] the fact that only a male person could hold the office, it is sufficient to say that it became innocuous as soon as the suffrage amendment was adopted, for when that amendment was adopted and the word "male" was dropped from section 2, Article IX, of our Constitution, every political distinction based upon the consideration of sex was eliminated from the Constitution and laws of this state, and the will of the people was declared to be that every woman shall be qualified to vote at general elections and for state officers, who is of the age

of twenty-one years or over, a citizen of the United States, a
resident of this state for one year immediately preceding the
election, and of the town, county or precinct for such time as
may be prescribed by law.   By the adoption of that amend-
ment the sex attribute was eliminated as a qualification to vote,
and by force of the language employed in section 11, Article
IX, it was also eliminated as a qualification to hold any office
under the Constitution or laws of this state.   The purpose was
not merely to confer the elective franchise upon women, but
to place them upon a plane of absolute equality with men, so
far as their political rights and privileges are concerned.

Appellant's contest, based solely upon the ground that the
successful candidate is a woman, is without merit, and the
judgment dismissing it is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HURLY
and COOPER concur.

Motion for rehearing denied December 8, 1919.