Appellants respectfully, but seriously, insist that this section 6975, Revised Codes of 1921, is in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States in that it denies to a certain class of persons within the state of Montana the equal protection of the law, as within the holdings in Duncan v. Missouri, 152 U.S. 377, 38 L.Ed. 458,14 Sup. Ct. Rep. 570 [see, also, Rose's U.S. Notes]; Gulf,Colorado Santa Fe Ry. Co. v. Ellis, 165 U.S. 150,41 L.Ed. 666, 17 Sup. Ct. Rep. 255; Atchison, Topeka etc. R.R. Co. v.Matthews, 174 U.S. 96, 43 L.Ed. 909, 19 Sup. Ct. Rep. 609;Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 46 L.Ed. 679,22 Sup. Ct. Rep. 431, and other cases. Section 6975 affords a clear example of attempted legislative classification, not justified by any considerations of a public character, and predicated solely upon the matter of sex. This is true because a male person, sui juris and of legal age, may, even though married, make testamentary disposition of personal property of any value without any restriction whatever, and without his wife retaining any interest therein. But section 6975 does not permit a married woman to dispose of her personal property by will without restriction, and if she attempts so to do, the husband retains a one-third interest therein. It follows that married women, if section 6975 is valid, are denied the equal protection of the law in the testamentary disposition of *Page 13 
their property. That the matter of sex alone does not constitute a sufficient justification for legislative classification based on that alone has been directly held. (Morgan v. State, 101 N.E. 6.)
Section 6975 is repealed by the Married Woman's Property Act. There is a broad general grant of power by section 6974 to make wills in this state which exists irrespective of section 6975. Sections 6974 and 6975 are directly in conflict. Section 6974 gives an unqualified right to every person over the age of eighteen years to make testamentary disposition of his property, real and personal, while section 6975 provides that a certain class of the persons mentioned in 6974 (married women) do not possess that unqualified right. In view of the emancipating statutes enacted in Montana in relation to married women it is submitted that the restrictive provisions of section 6975 must give way to the broad and general provisions of section 6974. [Here follows an extended review of the emancipating statutes and the disability of coverture incident to the common law.]
This great body of emancipatory law cannot be ignored. It cannot be set aside on the theory that it deals with another subject, or that it is not related chronologically and fundamentally to the statute which we here consider. It bears directly on this very subject, expressly secures a married woman's right to make a will operative without the consent of her husband, and in every conceivable respect treats her as an adult without disability as to person or property.
Section 6975 does not assume to speak with reference to the separate property of married women. Section 6975 simply establishes a provision for the husband, reciprocal to the provision established for the wife by dower. In other words, property which the wife accumulated during coverture, and in the accumulation of which the husband, presumptively at least, assisted, is not to be taken away from him by the wife's will without the recognition of his assistance and aid to the extent at least of one-third. The statute speaks only with reference *Page 14 
to marriage, and to the property accumulated, or made during the existence of coverture. It has no relation to what has transpired before or to what comes after. It is concerned simply with that property of the wife which has come to her during marriage and which, because of the relation of husband and wife, the husband naturally will, to some extent at least, manage and administer.
Charles W. Mahaffay and Mary W. Mahaffay became husband and wife on April 30, 1921, and that relation continued until the death of the latter on April 18, 1924. During all of this time both were residents of this state.
On November 27, 1923, at Helena in this state, Mary W. Mahaffay executed her last will and testament, naming the defendant A.L. Smith as the executor thereof. The other defendants are devisees under the will. Charles W. Mahaffay was not named therein.
After the death of Mary W. Mahaffay, her will was duly admitted to probate. The defendant Smith was appointed as executor, duly qualified as such and is now acting in that capacity. In the course of and in connection with these probate proceedings, the plaintiff instituted an action in the district court in the matter of said estate to determine heirship by filing a complaint, which was thereafter amended, setting up his claimed rights in the premises. In effect the averments of this complaint are that Mary W. Mahaffay died testate; that her will had been admitted to probate; that at the time of her death she owned certain real and personal property; that at the time of the making of her will Charles W. Mahaffay was her husband and had never assented in writing *Page 15 
to the making thereof, and was therefore entitled to one-half of her estate.
Separate answers were filed on behalf of the defendants, in which the relationship of husband and wife between Charles W. Mahaffay and Mary W. Mahaffay at the time of the execution of the aforesaid will was admitted; and it was also admitted that Charles W. Mahaffay was not named therein, and that no property was devised or bequeathed to him thereby. Affirmatively it was set up that the plaintiff had consented in writing to said last will and testament; also, that all the estate of Mary W. Mahaffay, deceased, both real and personal, was her separate and independent estate, acquired before her marriage to Charles W. Mahaffay by inheritance from her father and from her former husband; and that plaintiff had never contributed to or aided in the creation or acquisition of any portion of said estate. Replies were filed putting in issue all the allegations of the answers.
The case came on for trial before the court without a jury on July 12, 1926. Thereafter the court filed its findings of fact and conclusions of law and ordered judgment in favor of plaintiff for an undivided one-third of the estate of Mary W. Mahaffay, deceased. Judgment was entered in accordance with such findings and conclusions, and from this judgment the defendants have appealed.
Section 6975, Revised Codes of 1921, provides: "A married woman may make a will in the same manner and with the same effect as if she were sole, except that such will shall not, without the written consent of her husband, operate to deprive him of more than two-thirds of her real estate, or of more than two-thirds of her personal estate."
On behalf of the defendants it is contended on this appeal: (1) That Charles W. Mahaffay consented in writing to the operation of the will of Mary W. Mahaffay; (2) that section 6975,supra, has ceased to be operative; (3) that said section 6975 does not assume to speak with reference to the separate property of married women; (4) that said section 6975 is unconstitutional *Page 16 
as being in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it denies to married women within this state the equal protection of the law. We shall consider these contentions in the order above named.
1. The claim that plaintiff gave his written consent that his[1] wife's will should operate to deprive him of more than two-thirds of her real estate or more than two-thirds of her personal estate is based upon two documents signed by him. The first is a letter written by him to Mary W. Mahaffay about the month of October, 1922, when she was in a sanitarium at Salt Lake, in which he adverted to the fact that their marriage had not been a success for the reason that their tastes and inclinations led them in different paths, and suggested that under the conditions existing she should secure a divorce. The only reference to property in this letter is one to the effect that each should retain the tokens received from the other in memory of the sentiment which prompted their gift. The second writing referred to is a paragraph contained in an answer filed to a complaint in divorce proceedings instituted by Mary W. Mahaffay against the plaintiff, in which he alleged that she was possessed of a considerable amount of property in her own right, which allegation was made in resistance of her effort to obtain alimony from him in the divorce proceeding. The divorce case was never determined and was pending at the time of Mary W. Mahaffay's death.
Section 6975, supra, does not state what form this written consent must take, and under the facts in this case we do not feel called upon to pass upon that point. A painstaking scrutiny of the two instruments upon which counsel rely to establish such written consent fails to show in either any statement which can be construed, either directly or inferentially, as a consent to the making of a will by Mary W. Mahaffay that would operate to deprive her husband of any portion of her estate. *Page 17 
2. Section 6974, Revised Codes of 1921, provides: "Every person over the age of eighteen years, of sound mind, may, by last will, dispose of all of his estate, real and personal, and such estate not disposed of by will is succeeded to as provided in sections 7071 to 7092 of this Code, being chargeable in both cases with the payment of all the decedent's debts, as provided in the Code of Civil Procedure."
Counsel for defendants state in their brief: "In view of the emancipating statutes enacted in Montana in relation to married women it is submitted that the restrictive provisions of section 6975 must give way to the broad and general provisions of section 6974."
We preface our consideration of counsel's argument on this[2-4] matter with the observation that we are committed to the doctrine that the right to make a will is purely statutory and subject to the complete control of the legislature. As stated by Mr. Chief Justice Brantly in In re Noyes' Estate, 40 Mont. 178,105 P. 1013: "The right to make a testamentary disposition of property is not an inherent right; nor is it a right guaranteed by the fundamental law. Its exercise to any extent depends entirely upon the consent of the legislature, as expressed in the statute enacted on the subject. It can withhold or grant the right, and, if it grants it, it may make its exercise subject to such regulations and requirements as it pleases."
It is argued that by the amendment of the statutes concerning married women (Comp. Stats. 1887, p. 1046), the provisions of which have been carried forward through the various compilations of our laws and other statutes subsequently enacted, a married woman in this state has been fully emancipated from all disabilities which attached to her at common law, as evidenced by the facts that she is obligated to support her husband only if he is unable to do so out of his own property or by his labor (sec. 5784, Rev. Codes 1921); that neither husband nor wife has any interest in the property of the other except as above noted (sec. 5785); that *Page 18 
either husband or wife may enter into engagements or transactions with the other or with strangers subject only to the general law (sec. 5786); that they may hold real or personal property together jointly or in common (sec. 5789); that neither is liable for the debts of the other (sec. 5790); that a married woman may prosecute actions for injury to reputation, property and character, and may defend (sec. 5791); that all the property of the wife owned before marriage and that acquired afterward is her separate property, and that she may convey the same without the consent of her husband (sec. 5791); that her earnings are not liable for the debts of her husband (sec. 5795); that her earnings and accumulations are her separate property (secs. 5796 and 5797); that no estate is allowed the husband as tenant by courtesy upon the death of his wife (sec. 5812); that her political rights are the same as a man's or an unmarried woman's (sec. 2, Art. IX, Const.); and that she may hold public office in this state (Rose v. Sullivan, 56 Mont. 480, 185 P. 562); and that by the enactment of these various provisions the statute has established a public policy wholly inconsistent with the restrictive provisions of section 6975 and thereby it has ceased to be operative.
The public policy in this state is determined by the enactments of the legislature on subjects concerning which it has seen fit to speak. (Cruse v. Fischl, 55 Mont. 258,175 P. 878.) To ascertain the policy of this state with reference to the right of a married woman to dispose of her property by will, resort may be had to the various legislative enactments of the territory and state.
By sections 1 and 4 of "an Act concerning last wills and testaments," approved January 12, 1872 (Codified Stats., 7th Sess. p. 554), every person of full age and sound mind was vested with power to bequeath and dispose of real and personal property by last will and testament. In section 1 it was provided: "And any married woman may devise and dispose of any real or personal property held *Page 19 
by her, or to which she is entitled in her own right, by last will and testament in writing; and may alter or revoke the same in like manner as if she was unmarried," with a proviso that no such will made in favor of a church or an eleemosynary institution should be valid without the written consent of her husband.
In "An Act relating to probate courts and estates of deceased persons," approved February 16, 1877 (Laws of the Tenth Session, p. 349), section 432 contained the same general grant of power to every person of sound mind over the age of eighteen years, to make testamentary disposition of all his real and personal estate, and by section 435 it was provided: "A married woman may dispose of all her separate estate by will, without the consent of her husband and may alter or revoke the will in like manner as if she were single. Her will must be executed and proved in like manner as other wills."
The two sections above referred to were re-enacted as sections 432 and 435, respectively, of the Probate Practice Act, Second Division, Revised Statutes of 1879, page 271. In the Probate Practice Act of 1887 (Comp. Stats. 1887, p. 380), section 432 was re-enacted in the same language as it appeared in 1879, and has not been changed since that time, but now appears as section 6974, Revised Codes of 1921, whereas section 435 was amended so as to read: "That a married woman may make a will in the same manner and with same effect as if she were sole, except that such will shall not without the written consent of her husband, operate to deprive him of more than one-third of her real estate or of more than one-third of her personal estate." And an identical provision was made in section 1447, Fifth Division of the Compiled Statutes of 1887, page 1046, in "An Act concerning the rights of married women." This section was amended by section 255 of the Civil Code of 1895, by striking therefrom the declaratory "that," theretofore found as the first word of the section, *Page 20 
and changing the word "one-third" to "two-thirds," thereby diminishing the husband's right to but one-third of his wife's property. As thus amended the section was re-enacted as section 3735, Revised Codes of 1907, and section 6975, supra, in the 1921 revision.
From a consideration of the foregoing statutory provisions it is to be observed that the substance of section 6974 was contained in our statutes as early as 1872, and has been brought forward through the various compilations and codifications from that date down to the present, without substantial alteration; whereas, the provision relative to the extent of the power of a married woman to make testamentary disposition of her estate has been the subject of several changes and modifications.
By the provisions of the 1872, 1877 and 1879 statutes this power was limited to her separate estate. In 1887 this limitation was removed and she was given the right of testamentary disposition of all her property; but the provision was added that such will, without the written consent of her husband, should not operate to deprive him of more than one-third of her real or personal property. By the enactment of 1895 this right was further enlarged so as to enable her to dispose of two-thirds of her property without the written consent of her husband.
During the same period of time the various legislatures of the territory and state enacted laws for the relief of married women from the disabilities which attached to her under the common law, and, as above pointed out, they have substantially all been removed; but none of these legislatures has seen fit to give to a married woman the unrestrained right to make testamentary disposition of her property.
If it had been the intention of the law-making body to remove the testamentary restrictions imposed upon a married woman by section 6975, it would have been a simple matter for it to do so, but it has not seen fit to act in that *Page 21 
behalf. That the subject has been in the minds of the legislators is evidenced by the fact, heretofore adverted to, that by the Act of 1887 her power to make testamentary disposition of her property was enlarged by removing its limitations to her separate estate, and making it general, except as to the reservation in favor of her husband, and that in 1895 the reservation in favor of the husband was reduced from two-thirds to one-third of her estate.
From the foregoing we are unable to discover wherein section 6975 has been either directly or indirectly modified or abrogated, or that it is in any manner contrary to the policy of our law as declared by the law-making body.
3. As above indicated, in tracing the history of our statutes[5] relative to the right of a married woman to make testamentary disposition of her property, the statutes of 1872, 1877 and 1879 made specific reference to her separate estate; but this limitation was removed in 1887, and thenceforth she was empowered to make such disposition of all of her property.
When the restrictive proviso was placed in section 435 of the Probate Practice Act in the Compiled Statutes of 1887, no exception was made as to the character of the property embraced therein, and the same is true as to the section as it was amended by section 255 of the Civil Code of 1895, which has been brought forward and now appears as section 6975, supra.
The same legislative assembly which adopted the above-mentioned amendment in 1895 enacted what is now section 5792, Revised Codes of 1921, which provides: "All the property of the wife owned before her marriage and that acquired afterwards is her separate property. The wife may, without the consent of her husband, convey her separate property or execute a power of attorney for the conveyance thereof." *Page 22 
From these circumstances it is apparent that the legislative intent was to make the proviso applicable to all property of the wife without reference to the character or the time or manner of its acquisition, — otherwise some reservation would have been placed therein.
4. Finally, it is contended that section 6975 is violative of[6] the provisions of section 1 of the Fourteenth Amendment to the federal Constitution, in that it denies to a married woman in this state the equal protection of the law, because it deprives her of the power to dispose of her personal property by will without her husband's consent, whereas a married man may make such disposition without the consent of the wife.
Counsel call our attention to no authority or precedent which goes to the extent of their conclusion, and we know of none. So far as our investigation has led us, we have discovered no judicial determination that it is not competent for the legislature of a state to designate the quantum of an estate which one party to the marriage contract may be entitled to receive out of that of the other.
In the matter of the right to dispose of property while living and to make testamentary disposition of the same, essential differences have always been recognized between a married man and a married woman. While these distinctions have been largely removed by statutory enactment in this state, some are still retained. A married woman can convey all her separate property and give an absolute, unencumbered title to her real property without her husband's consent, but a married man whose wife has ever been within this state or territory cannot convey such title to realty without his wife having released her interest therein, since she is by statute endowed with a one-third part of all lands whereof her husband was seized of an estate of inheritance during the marriage (sec. 5813, Rev. Codes 1921), and this dower interest cannot be defeated by his will (sec. 5819, Id.), and in the event he should predecease her leaving *Page 23 
no child or descendants of children, she may, if she so elects, have in lieu of her dower, absolutely and in her own right as if she were sole, one-half of all the real estate which shall remain after payment of the debts and claims against her deceased husband (sec. 5821, Id.). No such encumbrance is placed upon the right of a married woman to make a conveyance of her separate real estate. She can convey an unencumbered title thereto without her husband's consent (sec. 5792, Id.). It has never, to our knowledge, been suggested that the provision which deprives a married man of the power to divest his wife of her dower right by will deprives him of the equal protection of the law.
The right to make testamentary disposition of property is one wholly within the province of the legislature of the state. InUnited States v. Perkins, 163 U.S. 625, 41 L.Ed. 287,16 Sup. Ct. Rep. 1073, the court said: "We know of no legal principle to prevent the legislature from taking away on limiting the right of testamentary disposition or imposing such conditions upon its exercise as it may deem conducive to public good." The state having the power to deny the right of testamentary disposition altogether (In re Noyes' Estate, 40 Mont. 178, 105 P. 1013), "when it grants it, it may annex to the grant any conditions which it supposes to be required by its interest or policy." (Mager v. Grima, 8 How. 490, 12 L.Ed. 1168.)
We have made reference to the subject of dower for the purpose of illustrating the fact that so far as property rights are[7] concerned, married men and married women have been considered as occupying different relations and situations which have been deemed sufficient to warrant the application of different rules to them in their respective rights of disposition. In other words, in respect to these rights they have always been considered under different classifications. This differentiation has been so long acquiesced in by both legislatures and courts, that *Page 24 
we must presume it is based upon such substantial differences and conditions as to make it natural and reasonable.
In this connection we think the language of the United States supreme court, in Noble State Bank v. Haskell, 219 U.S. 104, Ann. Cas. 1912A, 487, 55 L.Ed. 112, 31 Sup. Ct. Rep. 186, 32 L.R.A. (n.s.) 1062, quoted with approval by this court in Hill
v. Rae, 52 Mont. 378, Ann. Cas. 1913E, 210, L.R.A. 1917A, 495, 158 P. 826, may be appropriately repeated here: "We are commanded by the highest judicial authority of the land `to be cautious about pressing the broad words of the fourteenth amendment to a dryly logical extreme. Many laws which it would be vain to ask the court to overthrow could be shown, easily enough, to transgress a scholastic interpretation of one or another of the great guarantees in the Bill of Rights.'"
The rule has been many times declared by this court that when a statute is assailed as unconstitutional, the question is not[8] whether it is possible to condemn but whether it is possible to uphold, and that it will not be declared invalid unless its conflict with the Constitution, in the judgment of the court, is placed beyond a reasonable doubt. (Mills v.Stewart, 76 Mont. 429, 247 P. 332; State ex rel. Cryderman
v. Wienrich, 54 Mont. 390, 170 P. 942.) Testing the statute under consideration by this rule and in the light of judicial history, we think its validity should be upheld.
The judgment is affirmed.
Affirmed.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, MATTHEWS and GALEN concur. *Page 25