THE STATE OF MONTANA ex rel. ERNEST KRONA,
Plaintiff v. HOLMES, State Auditor, et al., Defendants.

(No. 8430.)

(Submitted April 20, 1943.  Decided April 23, 1943.)

[136 Pac. (2d) 220.]

Mr. *Albert H. Angstman,* for Plaintiff, submitted a brief and argued the cause orally.

Mr. *R. V. Bottomly,* Attorney General, and Mr. *Fred Lay,* First Assistant Attorney General, for Defendants, submitted a brief and argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

This is an original proceeding wherein a writ of mandate is sought.

The petitioner on behalf of himself and the other employees specified in section 439, Revised Codes, as amended by House Bill No. 53 of the 1943 Legislative Assembly, (Chapter 43) prays for a writ commanding the State Board of Examiners to approve his claim for salary for services rendered as a janitor at the capitol building for the month of March, 1943, and further commanding the State Auditor to issue and the State Treasurer to pay such warrant when issued, and likewise that all employees mentioned in section 439, as amended, be granted the same relief allowed the petitioner.

It is alleged and admitted that the State Board of Examiners employed the petitioner at a salary of $125 per month, but have denied the petitioner's claim for salary for March, 1943, and that the State Auditor will refuse to issue and the State Treasurer will refuse to pay the petitioner, or any other employee of the state mentioned in section 439, any salary warrant under the provisions of the statutes as they are now construed by the State Board of Examiners.

The Board bases its refusal to pay the petitioner upon these grounds: Section 439, Revised Codes, provided prior to the 1943 amendment that: ''From and after the passage of this Act, the salaries of watchmen, and utility men employed in the

state capitol building at Helena, Montana, shall be the sum of one hundred and twenty-five dollars ($125.00) per month. The salaries of janitors' shall be one hundred and twenty-five dollars ($125.00) per month. The engineers employed at the power house of the state capitol shall be paid the sum of one hundred. fifty-two dollars ($152.00) per month, and the head engineer and carpenter shall be paid the sum of one hundred seventy dollars ($170.00) per month.''

The present law, as amended by the last session of the assembly by House Bill No. 53, (Chapter 43) now reads: ''From and after the passage of this Act the salaries of janitors, watchmen,. utility men, engineers, and the carpenter at the State Capitol building and the Power House of the State Capitol building at Helena, Montana, *shall be fixed by the Board of Examiners of the State of Montana in its sound discretion.''*

For a long period of years the appropriations made for the employees mentioned in section 439 were made under the heading of ''Capitol Building.''

The appropriation made by the 1941 Session allowed for the employees mentioned in section 439 for the year ending June 30, 1942, specified that the appropriation was ''for salaries. fixed by law * * *.'' (See page 421, Laws of 1941.) This. meant of course the salaries for the employees enumerated in section 439 before the 1943 amendment. It will be seen that. the amount of the salaries of none of the employees ˌmentioned was fixed in the law as amended by the 1943 Session—that function being eliminated from the statute and imposed upon the Board of Examiners. In other words, under the old law the salaries were fixed by the statute and under the new law they are fixed by the Board of Examiners. It will thus be seen that the phrase ''fixed by law'' as carried in the appropriation bills· is not in harmony with section 439 as amended. Out of this. situation the contention is made in effect that when salaries are fixed by the legislature they are ''fixed by law'' but when they are fixed by the Board of Examiners they are not fixed by law. The appropriations made for ''Capitol Building'' by both

the 1941 and 1943 Sessions are made for "salaries fixed by law." (See 1941 Session Laws, page 421, and House Bill No. 151 of the 1943 Session.) The 1943 amendment to section 439, Revised Codes, by its terms became effective from and after its passage and approval. It was signed by the Governor February 13, 1943, and hence succeeded and eliminated the old law on that date. It appears that the employees involved were denied their salaries for the month of March even though the appropriation was made for such salaries for the balance of the fiscal year ending June the 30th by the 1941 Session, and it further appears that they will be denied their salaries out of the appropriations made by the 1943 Session. Whether there is any difference in the rights of the employees under the two appropriations we will not here consider as we think that phase of the matter is immaterial.

The State Board of Examiners, having been apprised of the amendment to section 439 and of the provisions of the statutes relating to the appropriations, adopted a resolution refusing to allow petitioner's claim for salary for March, 1943, and such ruling would apply to all the other employees mentioned in section 439. The position of the Board of Examiners appears to be based entirely on the phrase "fixed by law," which, according to the practice followed for a number of years, appears in the appropriation bills. We can discover no very sound reason why this question should be raised in the instant case. It is admitted and clearly obvious that the intention of the Assembly in making the appropriations for "Capitol Building Account" for the year ending June 30, 1943, and the appropriation made for that purpose by House Bill No. 151 at the 1943 Session, were made to pay the salaries of the state employees mentioned in section 439.

We are satisfied that the apparent inconsistency in the wording of the amended statute, section 439, and the wording of the appropriation bills was merely an oversight by the legislature and that that body would have remedied the situation had the error been called to its attention. We think the former

decisions of this court dealing with such controversies are very clear and there is little if any ground for conflicting opinions as to the proper course to pursue. In numerous cases this court has held that in the construction of a statute the intention of the legislature is to be pursued if possible. (*Lerch* v. *Missoula Brick & Tile Co.*, 45 Mont. 314, 319, 123 Pac. 25, Ann. Cas. 1914A, 346; *State ex rel. Carter* v. *Kall*, 53 Mont. 162, 166, 162 Pac. 385, 5 A. L. R. 1309; *Wibaux Improvement Co.* v. *Breitenfeldt*. 67 Mont. 206, 210, 215 Pac. 222; *Cottonwood Coal Co.* v. *Junod*, 73 Mont. 392, 397, 236 Pac. 1080; *State ex rel Kurth et al.* v. *Grinde et al.*, 96 Mont. 608, 32 Pac. (2d) 15; *State ex rel. Nagle* v. *Leader Co.*, 97 Mont. 586, 593, 37 Pac. (2d) 561.) And further that in the construction of a statute the intention of the legislature must control, and to ascertain that intention recourse must first be had to the language employed and to the apparent purpose to be subserved. (*McNair* v. *School District No. 1*, 87 Mont. 423, 426, 288 Pac. 188, 69 A. L. R. 866; *Campbell* v. *City of Helena*, 92 Mont. 366, 16 Pac. (2d) 1; *O'Connell* v. *State Board of Equalization*, 95 Mont. 91, 110, 25 Pac. (2d) 114.

In the case of *Barth* v. *Pock*, 51 Mont. 418, 427, 155 Pac. 282, 284, it was said: ''While the courts are without legislative power, the rule is recognized generally that, whenever it is manifest from the face of an Act that an error was made in the use of words, the courts will treat it as corrected to express the legislative will.'' (Citing *Hilburn* v. *St. Paul M. & M. Railway Co.*, 23 Mont. 229, 58 Pac. 551, 811.)

In *State ex rel. Lyman* v. *Stewart*, 58 Mont. 1, 11, 190 Pac. 129, 133, it was said: '' '* * * words or phrases which, if given effect, might defeat the manifest purpose of the statute, will be eliminated or regarded as surplusage.' ''

In *State ex rel. Hahn* v. *District Court*, 83 Mont. 400, 412, 272 Pac. 525, 529, this court said: ''When the intention of the legislature can be ascertained from the statute, words may be modified, altered, or supplied so as to compel conformity of the statute to that intention (2 Lewis' Sutherland, Statutory

Construction [2d Ed.], 663)." (See, also, *Rose* v. *Sullivan,* 56 Mont. 480, 185 Pac. 562; and *State ex rel. Griffin* v. *Greene,* 104 Mont. 460, 67 Pac. (2d) 995, 111 A. L. R. 770.)

The petitioner is entitled to the relief demanded and it logically follows that the appropriations made by the 1941 and 1943 Sessions for "Capitol Building" account are available to pay the salaries of all such employees as are mentioned in section 439, Revised Codes.

Let the writ issue forthwith.

MR. JUSTICE ERICKSON concurs.

MR. JUSTICE ANDERSON concurs in the result.

MR. CHIEF JUSTICE JOHNSON:

I concur in the result of the foregoing opinion, but not in all that is said therein. There is no question of the correction of any error in the 1941 appropriation Act, which was not erroneous in its reference to these salaries when enacted; nor is there any question of the supplying or changing of words in either appropriation Act. The sole question involved, and the sole ground upon which I concur in the result, is the disregarding of surplusage in order to give effect to the legislative intent.

It is obvious that the situation arises from the amendment of section 439 to remove the salaries in question from the class "fixed by law" to the class "not fixed by law," without the amendment of the 1941 appropriation Act or the modification of the 1943 appropriation bill to identify those salaries under the new class. This was clearly an oversight by the legislature. But, as pointed out above, the intent of the legislature to make the appropriations for those express salaries in both appropriation bills was clear and undisputed, and the question is whether the failure to accompany the amendment of section 439 by the amendment of the 1941 appropriation Act and the modification of the 1943 appropriation bill to express that change of classification is to be allowed to defeat the obvious legislative intention to provide for those identical salaries.

This court said in *State ex rel. Lyman* v. *Stewart,* 58 Mont. 1,

190 Pac. 129, 133, quoting from 25 R. C. L. 976, section 225: "When words occur in a statute which can be given no effect consistent with the plain intent of the statute, they must be rejected as without meaning. And words or phrases which, if given effect, might defeat the manifest purpose of the statute, will be eliminated or regarded as surplusage."

Section 592, 59 C. J. 992, similarly states the rule as follows: "While, as a general rule, every word in a statute is to be given force and effect, * * * words having no meaning in harmony with the legislative intent as collected from the entire Act, will be treated as surplusage, and will be wholly disregarded in the construction of the Act in order to effectuate the legislative intent; but this will be done only when necessary to make the statute conform to the obvious legislative intent; and where the deletion would change the intent, the words can not be rejected."

To the same effect are *Shapard* v. *City of Missoula*, 49 Mont. 269, 141 Pac. 544; *Rose* v. *Sullivan*, 56 Mont. 480, 185 Pac. 562; and *State ex. rel. Griffin* v. *Greene*, 104 Mont. 460, 67 Pac. (2d) 995, 111 A. L. R. 770.

The authority of those cases seems clearly applicable to the situation before us. Not only is no violence done to the legislative intent by regarding the phrase "fixed by law" as surplusage, but the legislative intent cannot be given effect without so regarding it.

Moreover, it is apparent and conceded that the phrase when used in the 1941 appropriation Act then correctly classified the salaries for which the particular appropriation was made, and that the identity of those salaries did not change with the change of their classification by the 1943 amendment of section 439. It is furthermore apparent and conceded that the retention of the former classification in the 1943 appropriation Act was a legislative error, but that the intent was to appropriate for these specific salaries, despite the erroneous reference.

I have no hesitancy, therefore, in holding the classifying phrase "fixed by law" in both appropriation Acts not only to

be unnecessary to the appropriations in question, but properly to be disregarded as surplusage in order to give due effect to the legislative purpose.

MR. JUSTICE ADAIR:

I concur. The petitioner Ernest Krona, a janitor at the state capitol building at Helena, has received no salary, wages or compensation since February, 1943. Neither have any of the other janitors there employed. The reason is that the 1943 legislature by an Act effective February 13, 1943 (Chaper 43, Laws of 1943), changed the theretofore existing law (sec. 439, Rev. Codes 1935) and then promptly forgot that it had so changed the law and, on the last day of the session, when it passed the appropriation bill, it erroneously referred to the appropriation for the payment of the janitors as "salaries fixed by law." By the amendment, Chapter 43, Session Laws of 1943, the legislature removed the janitors and certain other employees from the class of employees whose salaries are "fixed by law" and placed them in the class of employees whose compensation shall be left up to the Board of Examiners "in its sound discretion."

Janitors are necessary and they must be paid. The legislature recognized these facts and provided the appropriation to be used for such payments. The fact that the legislature forgot that it had changed the statute which "fixed" the janitors' salary at the definite amount of $125 per month to the undetermined amount "that shall be fixed by the Board of Examiners" does not change the purpose of the appropriation, and for this lapse of memory and oversight on the part of the legislature neither the janitors nor the executive officers of the state are chargeable. The money has been provided; it is available and it should be forthwith used to pay these men the wages and salaries due them.