GALBREATH, RESPONDENT *v.* ARMSTRONG, SHERIFF, APPELLANT.

SHERBURNE MERCANTILE CO., APPELLANT IN INTER-VENTION *v.* GALBREATH, RESPONDENT IN INTERVENTION.

No. 8568

Submitted September 13, 1945. Decided January 24, 1946.

167 Pac. (2d) 337

Mr. Lloyd A. Murrills, of Cut Bank, and Mr. W. R. McDonald, of Browning, for appellants.

Mr. S. J. Rigney, of Cut Bank, for respondent.

Per Curiam.

This is a companion case to Reagan v. Armstrong et al., 165 Pac. (2d) 1004, and to Smith v. Armstrong et al., 166 Pac. (2d) 793, and involves the same sheriff's sale in chattel mortgage foreclosure, substantially similar pleadings, and evidence in many respects the same. As in the Reagan case, the mortgagees alleged that they were the real parties in interest and were permitted to intervene.

The plaintiff in this case is the brother of Mrs. Reagan and the son and brother of the mortgagors. He claimed to be the owner of 74 horses converted and sold by the sheriff. The verdict was in plaintiff's favor against defendant and interveners for $4,550 as the value of the property found to have been converted by defendant, $1,092 for special damages for time and money expended by plaintiff in pursuit of his property, and $500 as exemplary damages. The jury also made special findings in which, on a list of the animals described in the complaint, they specifically found for the plaintiff as to 37 animals, of which eight were colts, eight geldings and 21 mares, and set the value of each colt at $25 and each other animal at $150. The values set for the various animals found to be converted total $4,550, the sum for which general damages were awarded. Nineteen of the 37 animals bore plaintiff's brand as registered in 1931 and ten of them bore the same brand otherwise placed. The eight colts were unbranded, but four of them apparently accompanied mares bearing plaintiff's registered brand and the other four

apparently accompanied mares bearing the brand otherwise placed.

Subsequently, upon consideration of the motion of defendant and interveners for a new trial, the judge ordered that the verdict be set aside and a new trial granted unless plaintiff should file his consent to the verdict's reduction to $2,000 actual damages, with interest, $300 special damages, and $500 exemplary damages. The reason stated for the order was: "that the evidence fails to support the verdict except as to eleven mares, one gelding, and eight colts, of the value fixed by the jury at two thousand dollars ($2,000.), and that the evidence fails to support a verdict of more than three hundred dollars ($300) special damages, and that the evidence is sufficient to support a verdict of two thousand dollars ($2000) actual damages, three hundred dollars ($300) special damages and five hundred dollars ($500) exemplary damages." The order did not identify the one gelding or the eleven mares as to which it sustained the special verdict. Plaintiff consented to the reduction and judgment was accordingly rendered. The question is, therefore, whether the evidence sustains the verdict as amended by the above order and judgment.

The evidence is of course conflicting, but there is competent evidence sustaining the value placed upon each of the 37 animals in the special verdict and therefore upon each of the twenty animals as to which the order and judgment conformed to the verdict. Our inquiry is accordingly limited to the question whether the evidence sustains plaintiff's claim of title to those twenty animals.

In this connection we immediately encounter the question of title under section 8604, Revised Codes 1935, which provides that every transfer of personal property, with exceptions not here pertinent, "is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who

are his creditors while he remains in possession, and the successors in interest of such creditors, * * * and against purchasers or encumbrances in good faith subsequent to the transfer.''

With reference to the horses concerning which the jury afterward found in his favor, plaintiff testified that he raised all but two of them. He did not say specifically where he obtained one of them, but only that he ''traded for'' it. Concerning the other, a gray mare, he testified that his mother gave it to him when it was a colt. Her source of title was not shown, and there was nothing to indicate that she obtained it from one of the mortgagors. Concerning all the rest of the animals, he said that he raised them and that he owned the mothers. Asked‘ where he had obtained the ''original breeding stock,'' he testified: ''My folks each gave me a few horses when I was just a little boy, and I had a brother who died, that willed me 25 head of mares.'' The evidence shows that this was his brother Reed who died about 1928 at the approximate age of twelve. Since wills are purely statutory (In re Mahaffay's Estate, 79 Mont. 10, 254 Pac. 875; In re Hauge's Estate, 92 Mont. 36, 9 Pac. (2d) 1065), and since under our statute (section 6974, Revised Codes 1935) only persons eighteen years of age or over are capable of making wills, the property of the deceased child must have passed to the father and mother in equal shares under section 7073, subdivision 2, and must therefore have come to plaintiff through them. The evidence indicates that plaintiff was about seven years old at his brother's death in 1928. His mother testified that he had had horses since he was three years old.

Thus it appears that with the exception of two animals all of the horses were the offspring of animals given him by either, or both, of his parents. However, there is no way of determining from the record which of them were the offspring of animals given him by his mother, or of animals given him by his father, or of animals given to him by both.

All of the horses claimed by the various members of the family have been kept together on the lands owned severally by them

and occupied as the home ranch and on adjacent open range to the north and west, and there apparently has never been any actual delivery of the animals to plaintiff followed by actual and continued change of possession. Under section 8604, supra, plaintiff's title is therefore not good as to the issue of animals transferred to plaintiff by his father, who was a party to the mortgage of 1940, foreclosed by defendant at interveners' request; but the situation is otherwise as to the issue of animals transferred to him by his mother, who was not a mortgagor.

However, the evidence here does not, as in Reagan v. Armstrong, supra, affirmatively prove plaintiff's claim of title void as to any specific animal, but merely fails to show as to which of the animals his title is valid, with the two exceptions noted. Therefore, while the judgment must be reversed and the cause remanded, the appropriate disposition of the cause will not be entry of judgment for defendant and interveners, but a retrial.

We have examined the other specifications of error and find that many of them, like that relating to punitive damages, consist of questions disposed of in Reagan v. Armstrong, supra, or in Smith v. Armstrong, supra, or are matters which are not likely to arise upon a retrial. We find that the others do not constitute material error, as in the case of Exhibits Nos. 14 to 48 and 76 to 100, inclusive, which were rejected because offered for a special purpose not within the issues or are not necessary to the final determination of this cause.

We have examined plaintiff's cross-specifications of errors but find none of them meritorious and necessary to the final determination of this cause.

The judgment is reversed and the cause remanded for retrial.

Rehearing denied March 28, 1946.