# Falls Branch Coal Company v. Proctor Coal Company.

(Decided May 23, 1924.)

## Appeal from Whitley Circuit Court.

1.  Mines and Minerals—Where Coal Innocently Taken, Landowner Can Recover Only for Trespass.—Where coal mining company innocently takes coal from under land of another, injured owner may not recover on theory of conversion of the coal after severance, but can only recover for the trespass to realty.

2.  Election of Remedies—While Plaintiff May Select Remedy, he cannot Change Measure of Recovery.—Although plaintiff may select his remedy, when more than one is appropriate, he may not, while doing so, change his measure of recovery from that fixed by settled law as flowing from same acts.

3.  Mines and Minerals—Value of Mineral Taken Customary Royalty from Mining Privileges in Community.—Measure of damages, where coal is innocently taken from under the land of another, is customary and usual royalty from mining privileges in that community.

4. Mines and Minerals—Acts Committed on Lands of Others Held Incompetent to Show Intent.—In action for damaeges for taking coal from under plaintiff's lands, evidence that defendant trespassed on lands of others in isolated instances was inadmissible to show trespass was wilful.

5. Trial—Court Erred in Submitting Wilful Trespass, where Evidence Showed Innocent Trespass.—In an action for trespass on land and taking of coal, court erred in submitting to jury criterion of recovery based on wilful and honest trespass, where evidence showed conclusively that trespass was innocent.

6. Constitutional Law—Courts Without Authority to Create Exceptions to Terms of Statute.—Courts are without authority to create exceptions to terms of statute, be it one of limitations or one dealing with other subjects, when those terms are broad enough to cover all causes, regardless of their hardships in particular cases.

7. Limitation of Actions—Ignorance of One's Rights Does Not Prevent Running of Statute.—Ignorance of one's rights does not prevent running of statute after cause of action has accrued.

8. Limitation of Actions—Statute Begins to Run Against Owner of Land Only When Taking of Coal Under Surface Discovered.—The five-year statute of limitations (Kentucky Statutes, section 2515) commences to run against the owner of land in favor of one taking coal under surface only when landowner discovers trespass, and on theory of estoppel, rather than under section 2519, relating to fraud.

9. Acknowledgment—Deed Unacknowledged, or Not Properly Acknowledged, Passed Title as Between Parties.—A deed without certificate of acknowledgment, or with a defective one, is sufficient to pass title as between parties.

10. Trespass—Owner Under Unacknowledged or Defectively Acknowledged Deed May Sue in Trespass.—One trespassing on land of another cannot take advantage of want of a certificate of acknowledgment to landowner's deed, or defective acknowledgment, though he shows a subsequent deed by same grantors to a third party, when he does not show that subsequent vendee paid valuable consideration, and did not have notice of prior deed.

11. Acknowledgment—Jurat Held Insufficient Acknowledgment to Deed. —A jurat, "Subscribed and sworn to before me this 6th day of May, 1890," was insufficient to entitle a deed to registration.

12. Vendor and Purchaser—Unacknowledged Deed Good as Against Subsequent Purchasers with Notice.—An unacknowledged deed is good as against subsequent purchasers with notice.

STEPHENS & STEELY and BASKIN & VAUGHAN for appellant.

H. C. GILLIS and TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The parties are each corporations engaged in mining coal. They own their mineral interests either as

absolute owner or lessee in tracts of land located in Whitley county, Kentucky, and in Campbell county, Tennessee, and they adjoin along many common lines. The plaintiff and appellee, Proctor Coal Company, filed this action in the Whitley circuit court against defendant and appellant, Falls Branch Coal Company, seeking to recover from it a large amount as damages for trespasses committed by defendant upon plaintiff's mineral rights under its land or which it held by lease, whereby it was deprived through the wrongful acts of defendant of large quantities of coal. To increase the measure of its damages, plaintiff expressly waived the trespass to its realty and sought to recover the value of the coal taken from its land by defendant at the mouth of the mine, which it claimed it had the right to do by styling its action as one brought *in trover* to recover the value of the property converted instead of one in trespass on real estate. The answer admitted the taking by defendant from plaintiff's land of a less quantity of coal than was claimed in the petition, but averred that it did so through an honest mistake as to the location of the lines between the parties and under the *bona fide* belief that it was operating on its own possessions. By a counterclaim it sought to recover for similar trespasses committed by plaintiff on its mineral rights and also for damages to its mine as a result of plaintiff extending its entries, airways, etc., across the barrier separating the lands of the parties and on to defendant's land, and after abandonment large quantities of water, black damp and foul and impure air accumulated therein, and that defendant thereby caused water and other deleterious substances so accumulated to penetrate the working places of defendant and damaged it in various respects as set out in the counterclaim. There was also a plea of limitation in bar of plaintiff's right to recover. The reply denied the trespasses by plaintiff as set up in the counterclaim and also relied on the statute of limitation. A jury trial was had and a large amount of testimony was introduced upon the issues formed by the pleadings, and under the instructions of the court a verdict was returned in favor of plaintiff for the sum of $8,000.00; and defendant's motion for a new trial having been overruled, it prosecutes this appeal.

Many questions supposedly affecting the merits of the case, either directly or collaterally, are discussed in

briefs of counsel, which if considered seriatim by us in this opinion would entail much useless labor and consumption of time on our part, as well as unduly lengthen the opinion. We have, therefore, concluded that a proper disposition of the appeal and a correct settlement of the rights of the parties, under the facts appearing in the record, will be made by a determination of these questions: (1),whether the amount of recovery may be measured by the rules applicable to an action for trover at the option of plaintiff in so designating it, or should the rule applicable to the measurement of damages in trespass to realty apply; (2), if the latter rule is found to be the correct one, then (a), whether there is sufficient evidence to show that the trespasses complained of were willful so as to call for the application of the same rule for the measurement of damages applicable generally to actions of trover, or (b), whether the testimony shows the trespasses were honestly committed under a mistaken belief that the trespasser was operating upon his own premises, and, therefore, liable for only the value of the mineral (coal in this case) *in situ,* and (3), whether the court erred in the instructions it gave to the jury by submitting therein the wilfulness of the trespasses committed and the consequent measure of damages therefor, and in the limitations it applied; and in declining to instruct the jury at the request of defendant on that portion of its counterclaim arising from alleged trespasses by plaintiff to a certain 20-acre tract of land, claimed to be owned by defendant, because, under the opinion of the court, defendant did not prove title to it.

1. In disposing of question (1), we might dismiss it absolutely upon the ground that it was abandoned by plaintiff at the trial, since it did not offer nor did the court give an instruction authorizing a recovery of damages for the conversion of the coal taken from its land after defendant separated it from its natural position in the earth. On the contrary, it offered instructions only upon the theory that its action was one solely to recover damages for trespass to realty. But, since the question is discussed in briefs, we will give it the consideration we think it deserves.

The strongest case relied on by plaintiff, as sustaining its right to recover in this case under the rules and principles governing actions for conversion, is that of Dennis Bros. v. Strunk, 32 Ky. L. R. 1230, where plaintiff sought to recover the market value of logs cut from trees

on his land by defendant while trespassing thereon, and in the course of the opinion it is, in substance, stated that the owner of land from which a trespasser has taken timber, minerals or other substances and by his labor transformed them from a part of the realty into personalty, may waive the trespass to his realty and proceed against the trespasser to specifically recover the converted personalty, or he may sue him and recover the value thereof at the time he appropriated it to his own use.     Taking the opinion literally upon its face, it would seem to sustain plaintiff's contention.     However, the cases to which it refers, and others of a like kind relied on by counsel for plaintiff (Strubee v. Trustee of the Cincinnati Railway Co., 78 Ky. 481; Jones Lumber Co. v. Gatliff, 26 Ky. L. R. 616; Little v. Cornett, 28 Ky. L. R. 1124; Ford Lbr. & Mfg. Co. v. Burtt & Brabb Lbr. Co., 157 Ky. 706, and Ward v. Guthrie, 193 Ky. 76), clearly show, and the fact was emphasized in the opinions, that the defendant *wilfully* and *knowingly* committed the trespasses, or in the same manner converted the property after it was obtained from the trespasser who was himself guilty of such conduct.     Thus in the Jones Lumber Company case, the court, in its opinion, said: "The rule which governs the measure of damages in this case is clearly stated in Strubee v. Trustee of the Cincinnati Ry. Co., 78 Ky. 481.     In that case it was decided that a *wanton* trespasser acquired no title to timber converted by him into cross ties, and passed none to his vendee so long as the identity of the article had not been destroyed." It was furthermore pointed out in that case that the defendant who had innocently acquired the timber had bestowed no value to it by any labor or skill of his own, which observation contained the intimation that if he had so acquired the property he might be allowed a reduction for any increased value that he had put upon it through the process of transformation.     While the opinion in the Strunk case does not show whether the trespass was willful or innocent, yet it is pointed out in the case of Roberts v. Moss, 32 Ky. L. R. 525, referred to in the Strunk opinion, that the trespass was willful and not innocent.     So that, in each case, so far as we have been able to find, where the market value of the property, as in cases of conversion, measured the criterion of damages recoverable, the trespass to the realty resulting in a conversion of the property by the trespasser into personalty was a willful trespass and, as we shall hereafter

see, in all such cases the trespasser is not entitled to credit by accessions to the value of the property produced by his labor and skill in separating it from the realty or otherwise.

Moreover, to hold that a plaintiff may, under the same state of facts, adopt one of two or more remedies to which he is entitled and to thereby change the rules applicable to the *extent of his relief* flowing therefrom would not only confer unwarranted power and authority upon plaintiffs, but would render the law as well as its remedies unsettled and uncertain and bestow upon litigants the right to greatly enhance the extent of their recovery by the mere choosing of the form of action they see proper to adopt. It is well enough to recognize the right in a litigant to adopt any procedure to which, under the facts, he is entitled, and to obtain the benefit of such remedy over another, equally open, but perhaps not a present adaptable one; but, in so doing no increase of amount of recovery should be allowed as an available benefit. The *benefits* to which he would be entitled by exercising his right of choice are such as relate to the venue of the action or other similar incidental or related questions, as was pointed out in the case of Roberts v. Moss, *supra,* wherein it was recognized that an action to recover personal property or for its value, if wrongfully converted, is a transitory one and may be brought in any county wherein defendant may be served; but the venue of one to recover for trespass to realty is local to the county in which the realty is situated. If, therefore, plaintiff should conceive that it would be to his advantage to locate the venue of his action in the one place or the other (granting there are more than one) he might do so by adopting the procedure maintainable in the venue he selects. Other authorities affecting the question under consideration will be referred to later in this opinion in the discussion of subdivision (a) of question (2). Hence, it is our conclusion that although plaintiff may select his remedy when more than one are appropriate to the facts, yet he may not by doing so change the measure of his recovery, from that fixed by the settled law as flowing from the same acts. A contrary rule would render the law inconsistent by limiting the measure of its relief to one litigant adopting one course of procedure and enlarging the same character of relief to another or the same one, dependent upon the remedy employed, and when

both causes of action are based upon the same facts; and we are convinced that there should be no such uncertain rule. We will, therefore, treat the case so far as the measure of relief to which the parties are entitled as if it was, as truly is, an action of trespass on realty.

2. The rule governing the amount of recoverable damages for trespass on realty, resulting in converting some of it into personalty and then appropriating the converted article, such as minerals and timber, is, that if the trespass was willfully and knowingly committed the value of the converted article at the time it was appropriated is the measure of recovery; but if the trespass was committed through an innocent mistake and under the *bona fide* belief that the trespassing defendant was the owner of the premises from which the separation took place, then the measuring rule is the value of the article in place before it was separated from the realty, and in case of minerals that value is the customary and usual royalty from mining privileges in that community. Many text authorities might be cited in support of the statement; but, since it has been frequently adopted and applied by this court, we will refer to only some of the later cases, which are: Sandy River Cannel Coal Co. v. White House Cannel Coal Co., 125 Ky. 278; Burke Hollow Coal Co. v. Lawson, 151 Ky. 305; Bennett Jellico Coal Co. v. East Jellico Coal Co., 152 Ky. 838; North Jellico Coal Co. v. Helton, 187. Ky. 394, and New Domain Oil & Gas Co. v. McKinney, 188 Ky. 183. In stating the rule, the opinion in the Helton case said: ''In view of another trial we deem it proper to say that the measure of damages for coal taken from another's land through an honest mistake is the value of the coal taken as it lay in the mine, or the usual, reasonable royalty paid for the right of mining. . . . On the other hand, where the trespass is wilful, and not the result of an honest mistake, the measure of damages is the value of the coal mined at the time and place of its severance, without deducting the expense of severing it.'' Those cases, as will be seen, firmly fix the rule to be that when the trespass is an honest one, the recoverable amount is the value of the mineral in place, and it would violate the coveted uniformity and certainty of the law to allow a plaintiff upon the same facts to change and alter it by the mere invoking of a differently named remedy.

The evidence directed to the character of trespasses committed by defendant and by means of which it extracted the coal belonging to plaintiff, for which a recovery is sought, conclusively shows to our minds that they were innocently committed and under the *bona fide* belief that defendant was operating on its own premises, and the fact that it went beyond its line on to those of plaintiff was due to a mistake in the length of one of its patent lines, which in the various transfers from the patentee to the defendant was by mistake, oversight, or in some innocent manner lengthened about one hundred feet. Because of that fact defendant's mine engineer in preparing the mine map, by which the extractors of the coal were governed, included therein some of plaintiff's coal located under its land and beyond the lines of the patent under which defendant claims. The evidence throughout the case clearly manifests the purpose and intention on the part of defendant and its officers to strictly observe its surface boundaries and not to take coal beyond them. Some of the evidence relied on to show a willful purpose was that defendant had trespassed upon some of its adjoining neighbors in the state of Tennessee where it was also operating from its same opening, or perhaps from other openings within its same boundary, which evidence we think was incompetent. Of course, if other trespasses committed by it were so frequent and numerous as to indicate a settled purpose and intention on its part, the testimony with reference thereto might become competent; but we have no such conditions in this case and the few isolated trespasses in other parts of defendant's operation were, we think, incompetent and also not probative. Some minor and, as the record shows, joking remarks were proven to have been made by a superintendent of defendant, from which a guilty intention is sought to be inferred but which he denied, and his course throughout his employment for defendant fortifies his denial by showing a firm and diligently observed purpose on his part to confine the operations to the boundaries of his employer, the defendant. Of course, during the period of long continued mining operations there may be occasional conversations about possible trespasses which are liable to be misunderstood and misinterpreted, and we can not believe, in the light of the overwhelming testimony in this case, that there is any substantial proof to show that the trespasses complained of were other than honest and mistakenly com-

mitted ones; which brings us to a consideration of question (3) above.

3.   The court submitted to the jury the criterion of recovery based upon both a willful and an honest trespass, and the jury evidently found that it was willful, as is perfectly manifest from the size of its verdict, and under the conclusion above expressed the instructions were erroneous in the respect mentioned.

The next point, under this question, is a most difficult one.   It is: When does the statute of limitation applicable to trespasses to real estate (section 2515, Kentucky Statutes) commence to run in a case of this kind? The statute provides that an action to recover for trespass on realty "shall be commenced within five years next after the cause of action accrued." If it should be held that a cause of action for the taking of a mineral from under one's land through an opening located off his land, and without any occupancy, temporary or otherwise, of his surface, all of which was true in this case, *accrues* at the time of the *taking,* then the statute of five years applies and courts could not engraft an exception thereon for the benefit of the one whose minerals were so taken, although, as will be readily seen, he had no possible means by which he could discover the wrong.  That the courts are without authority to create exceptions to the terms of a statute, be it one of limitation or one dealing with other subjects, when those terms are broad enough to cover all cases, regardless of their hardships under particular circumstances, is a well settled rule.   Shellenberger v. Ransom, 25 L. R. A. 564, and extensive annotation; Wall v. Pfanschmidt, 265 Ill. 180, 106 N. E. 785, 1915C L. R. A. 238, and annotation; Robertson v. Robertson, 100 Ky. 696; Western & Southern Life Ins. Co. v. Weber, 183 Ky. 32, and Eversole v. Eversole, 169 Ky. 793, 1916E L. R. A. 593.

The question involved in the Ransom and Eversole cases was whether an heir or distributee forfeited his right to inherit by murdering his ancestor or the person from whom he inherited, and it was held in each of them and in many others in the annotations in the publication in which they are reported, that notwithstanding the extreme unfairness and injustice of allowing the inheritance, yet, since the statute of descent and distribution made no exception in such a case, the courts were without authority to engraft one. And that prnciple, as is shown by the cases, is as applicable to statutes of

limitation as it is to those providing for descent and distribution. Furthermore, it is a general rule, as will be seen from the text in 17 R. C. L., page 831, paragraph 193, that ignorance of one's rights does not prevent the running of the statute *after the cause of action has accrued,* but in the latter part of that pargaraph, as well as in paragraph 159 (page 792) of the same volume, it is said that "In the case of an action for the removal of coal from a stratum beneath the surface of land by wrongfully extending a mine under lands of other owners it has been held that the statute begins only from the time of actual discovery of the trespass, or the time when discovery was reasonably possible." The supreme court of Pennsylvania, in the case of Lewey v. H. C. Fricke Coke Co., 166 Pa. St. 536, 31 Atl. 261, 45 A. S. R. 684, 28 L. R. A. 283, had before it the exact question involved in this case and arising upon the same facts, *i. e.,* that the trespass was committed under ground and from an opening some distance away from the plaintiff's property and with no visible facts or circumstances which would lead to a discovery, and in holding that the cause of action did not *accrue* or the statute begin to run until the discovery of the trespass or from such a time as its discovery was reasonably possible, among other things, said:

"Mere ignorance will not prevent the running of the statute in equity any more than at law; but there is no reason, resting on general principles, why ignorance that is the result of the defendant's conduct, and not of the stupidity or negligence of the plaintiff, should not prevent the running of the statute in favor of the wrongdoer.

"It seems to be a general doctrine in courts of law that the plaintiff is bound to know of an invasion of the surface of his close. The fact that his land is a forest, and that the defendant goes into its interior to trespass by the cutting of timber, does not relieve against its operation. What is plainly visible he must see at his peril, unless, by actual fraud, his attention is diverted and his vigilance put to sleep. But ought this rule to extend to a subterranean trespass? The surface is visible and accessible. The owner may know of its condition without trespassing on others, and for that reason he is bound to know. The interior of the earth is invisible and inaccessible to the owner of the surface, unless he is

engaged in mining operations upon his own land; and then he can reach no part of his own coal stratum except that which he is actually removing. If an adjoining landowner reaches the plaintiff's coal through subterranean ways that reach the surface on his own land and are under his actual control, the vigilance the law requires of the plaintiff upon the surface is powerless to detect the invasion by his neighbor of the coal 100 feet under the surface.

"The case at bar affords an excellent illustration of ignorance due to the defendant's conduct, and without fault on the part of the plaintiff. The defendant was mining its own coal through its own shafts or drifts opened on its own lands. In the course of its operations, and for its own convenience, it pushed an entry or passage under the plaintiff's lands, and appropriated the coal removed therefrom. It was bound to know its own lines, and keep within them. If, by mistake or for any other reason, it did invade the mineral estate of another, and remove and appropriate the coal therefrom, good conscience required that it should disclose the fact, and pay for the coal taken. Its failing to do this is, in its effects, a fraud upon the injured owner; and if he has no knowledge of the trespass, and no means of knowledge, such a fraud, whether it be called constructive or actual, should protect him from the running of the statute."

To the same effect is the text in section 867 in Lindley on Mines, and the case of Lightner Mining Co. v. Lane, 161 Cal. 689, 120 Pac. 771, Ann. Cas. 1913C, 1093, in which are cited many cases from different courts, some of which are: Porter v. Smith, 65 Ala. 169; Tillison v. Ewing, 87 Ala. 350, 5 So. 276; Traer v. Clews, 115 U. S. 537; Bailey v. Glover, 21 Wall. 346; Cook v. Chicago, Rock Island and Pacific Ry. Co., 81 Iowa 551, 25 A. S. R. 512; Shelby County v. Bragg, 135 Missouri, 298, and many others, some of which are English cases. The basis for the ruling in most of the cases so holding is that it was the duty of the trespasser to know when he crossed his line and became such, and it thereupon became his duty to notify the owner of the premises trespassed upon, and if he remained silent and failed to do so, it was a constructive fraud the same as positive fraud by denying the trespass when inquired about it;

and that because of his fraudulent concealment the cause of action did not *accrue* until the trespass was discovered. Mr. Justice Miller of the Supreme Court, in his opinion in the Bailey case in dealing with the question, said: "We are of the opinion that the weight of judicial authority, both in this country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statute of limitations. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in such a manner that it concealed itself until such a time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure. And we see no reason why this principle should not be as applicable to suits tried on the common-law side of the court's calendar as to those on the equity side."

A minority of the courts hold to the contrary, but we think the reasoning of those applying the majority rule, is not only sound but manifestly just. It does not attempt to engraft an exception to the letter of the statute, but provides a means by which one may not be deprived of his property without remedy by postponing the time of the *accruing* of the action until he actually discovers his rights, or it becomes reasonably possible for him to do so. We do not think that section 2519 of the statutes has any application to the case. The fraud therein mentioned is descriptive of the acts and conduct producing the cause of action itself, and which produce the injury or damage constituting the right of action and does not refer to fraud, the only effect of which is to conceal the cause of action. It will, therefore, be seen that the cases and authorities postponing the accrual of the cause of action in cases of this kind, place it upon principles analogous to an estoppel, and which, as hereinbefore stated, we think is both sound and just. There is nothing in the opinion in the case of Dragoo v. Cooper, 9 Bush 629, militating against the above expressed views, since in that case the *cause of action* was not concealed, but on the

contrary it was known from the beginning. There, a horse was stolen from plaintiff, but he did not know the thief, nor did he locate his horse in possession of the defendant till after his cause of action was barred. It was not a case of being ignorant of possessing a cause of action, but rather one where the person to be sued was not located within the limitation period, and we, therefore, do not regard it as applicable to the facts of this case.

It is, however, seriously contended by learned counsel for defendant that the evidence in the case discloses that plaintiff discovered the trespasses complained of more than five years before the filing of its petition. There is considerable evidence to support that contention, but it was contradicted by the testimony of the president of plaintiff, and there was other evidence that some of the pillars and stumps in the territory trespassed upon were removed within less than five years prior to the filing of the action, and of course the liability of defendant for such taking, if true, was not barred. We, therefore, conclude that the court properly submitted the issues as to the time of plaintiff's discovery of the trespasses, as well as defendant's liability for all coal taken within five years thereafter.

The court, as stated in briefs, declined to submit to the jury a portion of defendant's counterclaim growing out of alleged trespasses and deprivations by plaintiff on a certain 20 acre tract of land claimed to be owned by defendant. The testimony shows that a link in the chain of its title to that tract is a lease to a one-half undivided interest in it, but the lease does not include that tract. A link in the chain of defendant's title to the other half undivided interest in the tract is a deed from a trustee executed in the city of Chicago, but not acknowledged as required by law, the notary before whom it purports to have been executed attached thereto only a jurat saying: ":Subscribed and sworn to before me this 6th day of May, 1890." Clearly that was insufficient to entitle the deed to registration. But, without any certificate of acknowledgment, defective or otherwise, the deed was sufficient to pass the title as between the parties. Ferrill v. Childers, 172 Ky. 760; Virginia Iron, Coal & Coke Co. v. Combs, 186 Ky. 261; Riddell v. Jones, 191 Ky. 763. No alleged innocent purchaser is claiming any interest adverse to that deed, and plaintiff is in no attitude to take advantage of the want

of a certificate of acknowledgment thereto. To defeat the effect of that deed it introduced a subsequently executed one by the same grantor to other parties who are not attempting to assert any rights herein, and counsel insists that the mere fact of the execution of the subsequent deed is sufficient to defeat defendant's title to the one-half undivided interest conveyed by the defectively acknowledged one. We, however, are not inclined to agree with that position, since, in order to have that effect, it should be shown that the subsequent vendee was not only one for a valuable consideration, but also that when he made his purchase he did not have notice of the prior unacknowledged deed, for such deeds are not only good as between parties but also as against subsequent purchasers with notice of their execution. Defendant, therefore, showed itself entitled to recover at least one-half the provable damages claimed to have been committed on the 20 acres. Ward's Heirs v. Harrison, 3 Bibb 306; New Domain Oil & Gas Co. v. McKinney, *supra,* and Morgan v. Big Woods Lumber Co., 198 Ky. 88.

Wherefore, the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion. Whole court sitting.