## Summers et al. v. Summers et al.

(Decided Jan. 12, 1937.)

J. C. SPEIGHT for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

L. O. Summers and his sister, Emma Summers Tackett, owned a tract of land in Carlisle county which they had inherited from their parents and a brother, who had died intestate and unmarried. In 1911, a division of the land was made, and L. O. Summers executed and delivered to Emma Tackett a deed to that portion of the land set aside to her in the division, and, on the same day, Emma Tackett and her husband, F. M. Tackett, signed a deed conveying to L. O. Summers the remaining half of the tract of land jointly owned by L. O. Summers and Emma Tackett. This deed was acknowledged by the grantors before H. W. Clayton, deputy county clerk. On the deed this indorsement appeared: "R. O. Willingham, Jr., C. C. C. C., by H. W. Clayton, D. C.", but the clerk failed to make out the certificate of acknowledgment. The deed signed and

acknowledged by Emma Tackett and her husband was delivered to L. O. Summers, who placed it in a cigar box containing other papers belonging to him in a dresser drawer in his home where it remained for more than two years, when Summers learned that it was not a recordable instrument because it bore no certificate of acknowledgment. He was advised to procure another deed from his sister, and in January, 1914, she and her husband executed a deed containing the same description of the land as the former deed, but conveying the land to Lula Summers and her bodily heirs. Lula Summers was the wife of L. O. Summers. This deed was delivered to L. O. Summers, who placed it in the cigar box with his other papers and the first deed. Lula Summers died February 15, 1915, leaving four children by L. O. Summers, ranging in age from eight to nineteen years. L. O. Summers continued in possession of the land after his wife's death, and he and his children lived there at intervals until this action was brought. He purchased a house and lot in the town of Milburn in 1912, where he resided when not living on the land. Clyde Summers, his oldest son, lived with him until Clyde's marriage in 1921. Clyde Summers moved on the land in April, 1931, under a rental contract with his father. On November 4, 1931, Clyde Summers lodged for record in the Carlisle county clerk's office the deed which Emma Tackett and her husband had executed to Lula Summers. Thereafter L. O. Summers brought this action against his four children and the heirs of Emma Tackett to cancel the deed and to quiet his title to the land. Three of the children disclaimed any interest in the land, but Clyde Summers answered, alleging that he was the owner of a one-fourth interest in the land which he had inherited from his mother, who had acquired title by virtue of the deed executed to her by Emma Tackett and F. M. Tackett. The circuit court canceled this deed, and adjudged that the plaintiff L. O. Summers was the owner and entitled to possession of the land in dispute, and a special commissioner was appointed for the purpose of executing a deed conveying the land to the plaintiff.

The first deed executed by Emma Tackett and her husband was good as between the parties, and vested the title in L. O. Summers. Brewer v. Lee, 252 Ky. 798, 68 S. W. (2d) 409; Falls Branch Coal Co. v. Proctor

Coal Co., 203 Ky. 307, 262 S. W. 300, 37 A. L. R. 1172; Virginia Iron, Coal & Coke Co. v. Combs, 186 Ky. 261, 216 S. W. 846. It was not a recordable instrument, since it bore no certificate of acknowledgment, but the clerk's indorsement on it showed that it had been acknowledged before him by the grantors and the certificate could have been added at any time. If L. O. Summers had delivered the second deed to his wife, the grantee named therein, or had lodged it for record, the effect would have been to supersede and rescind the first deed. Reid v. Reid, 230 Ky. 835, 20 S. W. (2d) 1015; Shearer v. Huff, 243 Ky. 653, 49 S. W. (2d) 589. It is satisfactorily established by the proof, however, that the second deed was never delivered to Lula Summers, and there is no proof that she had any knowledge of its existence. On the contrary, it is shown that both deeds remained in the possession of L. O. Summers until November, 1931, when Clyde Summers obtained possession of the second deed and lodged it for record. He testified that his father informed him of the existence of the deed, and told him that he could have it recorded. He stated that he went to his father's home, and that his sister, Mary Summers Hayden, delivered the deed to him in his father's presence. Both L. O. Summers and Mary Hayden denied that any such transaction occurred, and L. O. Summers testified that his son obtained possession of the deed without his knowledge or consent. The evidence amply supports the chancellor's finding that the second deed was never delivered to Lula Summers, or her heirs, and that the first deed vested the title to the land in L. O. Summers.

In their pleadings, L. O. Summers and Clyde Summers asserted certain counterclaims and set-offs against each other, but the circuit court adjudged that neither of them was indebted to the other, and we think that this part of the judgment is also sustained by the evidence.

The judgment is affirmed.