## Kentucky State Fair Board v. Fowler.

June 10, 1949.

608

Brown, Greenebaum & Eldred, James W. Stites, Squire N. Williams, Jr., Assistant Attorney General, A. E. Funk, Attorney General, and B. L. Shamburger for appellants.

Ben B. Fowler and Dailey & Fowler for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

The appeal is from a judgment declaring invalid a lease executed by the Kentucky State Fair Board and Kentucky Building Commission, lessors, and Fair Grounds Speedway, Incorporated, lessee, one of the organizers of which is J. Fred Miles of Louisville. A lease previously executed by the State Fair Board and J. Fred Miles in his individual capacity was held to be invalid in Hargett v. Kentucky State Fair Board, 309 Ky. 132, 216 S. W. 2d 912. We will not iterate the grounds upon which invalidity was declared because they are set forth fully in the opinion in that case. Appellee's criticism of

the present lease is; (1) that it is an unreasonable exercise of the Fair Board's leasing authority; (2) it violates KRS 247.155 in respect to gambling on the Kentucky State Fair Grounds, and violates KRS 247.160 by delegating to a private corporation control over concessions, shows, and exhibitions to be conducted on the Kentucky State Fair Grounds; and, (3) the lease contravenes public policy because Honorable J. Fred Miles, Chairman of the State Racing Commission, is a stock holder in the lessee. The third ground relied on was not urged by appellee in the Court below, but was the specific ground upon which the Chancellor based his conclusion that the lease is invalid.

The principal argument in support of the first ground is: that under the lease the Kentucky State Fair Board has not retained the right to use the leased property for its own purposes at any time during the terms of the lease, even when the State Fair is being conducted. The lease specifically covers more than one-half of the property controlled by the State Fair Board in Jefferson County, and included in which are virtually all of the horse and cattle barns on the entire premises. In the preamble to the lease appears the following recitation:

"Whereas the lessee desires to conduct upon certain portions of the leased premises at such times and in such a manner as not to hinder, impede or interfere with the public use of said property, trotting racing in accordance with the rules, regulations and standards of the United States Trotting Association, said rules, regulations and standards now being on file in the office of the Secretary of State, Frankfort, Kentucky."

The purposes for which the premises have been let appear in the lease in the following words:

"The purpose of this lease shall be the conducting, carrying on and holding, upon and within the enclosure (more specifically described elsewhere herein and as shown on the plat attached hereto), of trotting races in the manner now permitted by law by the lessee or its successors or assigns, to encourage the breeding of pure-bred horses within the Commonwealth and to conduct the operation upon a high grade, in the interest of all

parties concerned. These purposes shall be the guide used in the interpretation of this lease.'' In their joint brief the lessors and lessee have placed their own construction on these provisions of the contract. That construction is to the effect that all the property under lease is reserved for the use of the Fair Board in conducting the State Fair, which under the provisions of the lease may comprise 365 days in each and every year of the term or extended terms of the lease. In the event that the State Fair should encroach upon the lessee's qualified right to conduct fifty-two days of racing each year, an equitable adjustment shall be made in the rental for each year of such encroachment. We think the provisions of the lease are susceptible of this construction; therefore, we will treat such construction as an agreement of the parties by way of contemporaneous construction, and will give it binding effect by adopting it as our own. Another argument urged by appellee to uphold the Chancellor's decision and to support appellee's contention that the Fair Board has exceeded its authority, is that the lease provides that if the lessors should exercise their right to cancel the lease, they shall not permit trotting racing to be conducted on the premises for the period of the original term of the lease, which is four years from the time of its execution; and, if the lease is renewed beyond the original term for the first extended term of three years, the lessors will not again lease the premises for trotting races for such extended term; and if the lease is renewed for the second extended term of three years, the prohibition against leasing the premises for such purposes shall become effective for the period covered by such extended term. We think this provision of the lease not to be unreasonable. All parties to the lease agree that it will be necessary for the lessee to, and that it will, expend not less than $100,000 in improving the grandstand, stables, and track on which trotting racing will be conducted. Undoubtedly, after such extensive improvements shall have been made by the lessee, the lessors would be able to lease the premises to third parties who would, by reason of such improvements, be willing to pay rentals in excess of that provided for in the present lease; and since the lessors, under the terms of the lease, have the right to cancel at the end of the original four year

term, or at the end of the first three year period of extension by giving two years notice, or at any other time by giving thirty-six months notice, it is no more than just that the lessee should be protected in its investment to the extent indicated. The argument that the rule adopted in the Hargett case, supra, is sufficient to justify affirming the Chancellor is not well taken. Appellee reasons that the Fair Board was created to conduct a State Fair, and the General Assembly gave it authority in KRS 247.140 subsection (2) to dispose of its property in the manner prescribed by law. He then argues that the decision in the Hargett case construed this section of the statute to mean such disposal as will permit the Fair Board to retain its freedom to conduct the State Fair, and this freedom it has failed to preserve in the lease under consideration. But as we have already seen, that under our own construction and that of the parties to the lease, the lessors have retained absolute freedom to conduct the State Fair on the leased premises, even if the Board should decide to operate it continuously for the entire term of the lease, or any extension thereof. The decision of this Court in Board of Park Com'rs of Ashland et al. v. Shanklin et al., 304 Ky. 43, 199 S. W. 2d 721, is not in conflict with the views herein expressed. In that case the Court was dealing with property which had been dedicated as a park for the free use of the public. The property under lease in this case is not to be considered in the same category: it was not dedicated to the free use of the public, but was acquired for the purpose of conducting a State Fair, and, so long as the lease does not interfere with this purpose and is not needed for other state purposes, which at the time of the execution of the lease, to-wit: February 23, 1949 was a fact to be, and which has been, determined by the Kentucky Building Commission KRS 56.400(7), or unless it is in contravention of law or public policy in other respects, the letting is a valid exercise of the power of the State Fair Board and the Kentucky Building Commission.

The lease provides that the lessee may install separate utility meters on the leased premises and to disconnect these meters in its discretion. Appellee points to this provision of the lease ''as further evidence that the Fair Board has not retained any right to use the pro-

perty in question." This argument at best, is desperately specious. The right on the part of lessees to install and disconnect utility meters is not a denial of the right on the part of the lessors to do likewise at such times as the Fair Board may elect to use the property for conducting a State Fair.

The contention that the lease contravenes the provisions of KRS 247.155 and 247.160 is without merit. True it is that KRS 247.155 provides that gambling may not be carried on "within the confines of the grounds of the Kentucky State Fair," and KRS 247.160(1) states that:

"The State Fair Board shall have exclusive control of concessions, exhibitions, shows, entertainments and attractions at any place on the State Fair Grounds, * * *." and KRS 247.140(3) provides:

"Wherever the term 'State Fair Grounds' is used in KRS 247.150 and 247.160 it shall include any grounds upon which the State Fair Board holds an annual fair." But in so far as these sections purport to apply to activities conducted on the State Fair Grounds at such times other than those during which the State Fair is being conducted, they are not germane to the title of the Act, which was passed by the General Assembly in the year 1944 and is compiled under Chapter 118 of the 1944 Acts. The title reads:

"An Act relating to the operation of games of chance and gambling devices at the State Fair."

Section 51 of the Constitution in so far as pertinent to the question recites:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, * * *."

The decisions construing this section of the Constitution are legion, and they consistently have held that the title to a Legislative enactment shall give fair and reasonable notice of the substance of the Act and the scope of its application, so as to prevent surreptitious legislation; and that the title must be construed in the light of the language used in it alone, not in the light of the language which the body of the Act contains. One

of the many cases so holding is Talbott v. Laffoon, 257 Ky. 773, 79 S. W. 2d 244. For additional authorities see Notes and Annotations to the Kentucky Revised Statute under Section 51 of the present Constitution. The language of the title to the Act under discussion limits the application of the restrictions contained thereon to the period of time during which the State Fair is to be conducted. It does not indicate that the Act relates to the use of the State Fair Grounds at any other time. The prohibitions contained in the Act are valid within the scope of the title, but beyond that they have no legal efficacy. We suggested in the Hargett opinion, supra, and we now hold, that for this reason the sections of the statute above quoted apply only when the State Fair is in progress. But even if this were not true, subsection (2) of KRS 247.160 clearly shows that the exclusive control referred to in subsection (1) thereof is not such as would be interfered with by the mere leasing of concessions.

The final objection to the lease is that which the Chancellor interposed, although it was not argued or contended for on submission of the case to him. The public policy of a state is to be found: first, in the Constitution; second, in the Acts of the Legislature; and third, in its Judicial Decisions. St. Louis Min. & Mill. Co. v. Montana Mining Co., 171 U. S. 650, 19 S. Ct. 61, 43 L. Ed. 320. Where the Constitution is silent, the public policy of the State is to be determined by the Legislature on subjects which it has seen fit to speak. In re Mahaffay's Estate, 79 Mont. 10, 254 P. 875, 877. It is only where the Constitution and the Statutes are silent on the subject that the Courts have an independent right to declare the public policy. Chreste v. Louisville Ry. Co., 167 Ky. 75, 180 S. W. 49, 52, L. R. A. 1917B, 1123, Ann. Cas. 1917C, 867. Until the mind of man becomes conditioned to the point that it can reconcile the many different and varying disciplines of thought in respect to human actions and relations, the Courts should use extreme caution in declaring a transaction to be void on the ground that it contravenes public policy. The Kentucky Constitution has left to the discretion of the Legislature the power to establish the public policy of the Commonwealth in respect to the interest a public officer may have in a contract with the state. There is

no provision in the statutes which forbids the Chairman of the Kentucky Racing Commission, whose powers and duties are limited to running races, trotting racing being specifically excluded (KRS 230.010), from being interested as a stockholder in a corporation under contract with the Commonwealth, although the Legislature has spoken on the subject by declaring contracts let by certain officers or agencies of which they are members to be void, if such officer personally should be interested in the contract. The incompatibility of official representation on the one hand and individual interest on the other is based on the philosophy that "No man can serve two masters." A showing that an officer of the Commonwealth is a mere stockholder in a corporation does not preclude the corporation from entering into a valid contract with the Commonwealth, provided such contract is not entered into on behalf of the Commonwealth by such stockholder or by a state agency with which he is affiliated. But it is suggested that the Racing Commission has the authority to fix the time at which running races may be conducted in the Commonwealth, and that the Chairman of the Racing Commission may exercise his discretion in allotting such time so as to favor the lessee herein in fixing its dates for racing. But the assumption upon which this suggestion is based is not well founded. The State Racing Commission does not fix the dates for the conduct of running races. It merely approves or disapproves the dates selected by the organization authorized by law to conduct running races at specified tracks. In the event that approval is arbitrarily or capriciously withheld, the applicant may resort to the Courts for relief. KRS 230.040 and 230.060. We are of the opinion that there is no legal reason for declaring the lease to be invalid because the Chairman of the State Racing Commission is a stockholder in the lessee.

The lease under consideration has been drafted so as to, and it does, meet the objections to the contract of lease between the State Fair Board and Mr. Miles as pointed out in the opinion in Hargett v. Kentucky State Fair Board, supra.

We conclude that the lease under attack is valid, for which reason the judgment is reversed with direc-

tions that it be set aside and that another be entered in conformity with this opinion.

Judge Thomas dissents.