Mrs. Henry BEDINGER et al., Appellants,

v.

Mrs. Luella GRAYBILL'S EXECUTOR & TRUSTEE, et al., Appellees.

Court of Appeals of Kentucky.

March 22, 1957.

Dissenting Opinion March 29, 1957.

Rehearing Denied June 21, 1957.

James R. Richardson, Thomas P. Bell, Walter C. Cox, Jr., Lexington, for appellants.

Paul H. Mansfield, Robert Hayes, Lexington, for appellees.

STANLEY, Commissioner.

The case presents what may be said to be, as a popular expression of today, "A $64,000 question." Is it lawful for a man to adopt his wife as his child and heir at law? The amount involved is approximately $64,000.

By her will, executed in August, 1914, Mrs. Luella Graybill set up a trust for her son, Robert E. Graybill, for his life. The trustee was authorized to pay him one-half the corpus. The third paragraph of the will reads:

"After the death of my said son, I direct that the trust estate in the hands of the Trustee be paid over and distributed by the Trustee to the heirs at law of my said son, Robert E. Graybill, according to the Law of Descent and Distribution in force in Kentucky at the time of his death."

A holographic codicil dated December 12, 1922, provided, "If my son, Robert, dies without heirs, the estate is to be divided between Foreign Missions & Ky. Mountain School."

The son and the appellee, Louise W. Graybill, were married on December 25, 1922. He was then 39 and she was 26 years old. The testatrix died on April 9, 1923. On March 18, 1941, when he was 58 and she was 45 years old, by a proceeding in the Fayette County Court, Robert E. Graybill adopted his wife. The judgment recited she was adopted "as his legal heir at law and child and after this date she shall be deemed to all legal intents and purposes the legal heir at law of said Robert E. Graybill."

Robert E. Graybill died October 28, 1955, without a child having been born to him. This suit is to have the court declare whether Mrs. Graybill, as his adopted heir, or his cousins, as his natural heirs, or "Foreign Missions & Ky. Mountain School" are entitled to the remaining corpus of the trust. The court, in a learned opinion, concluded that the adoption of the wife was lawful and adjudged her entitled to the trust estate. The appeal by the decedent's cousins challenges the judgment.

■ The judgment of adoption of the County Court being that of a court of competent jurisdiction is, of course, final and cannot be set aside or vacated by a collateral attack unless it be shown to be void ab initio.

■ Under the Kentucky Law an adopted child is regarded as and included within the designation of an heir or an heir at law and may inherit or receive property through, as well as from, the adopter unless a contrary intention is apparent from the language of the will devising the property. KRS 199.530; Major v. Kammer, Ky., 258 S.W.2d 506. There is no contrary intention apparent in Mrs. Luella Graybill's will. The provision is clear and explicit that the estate shall go to her son's "heirs at law * * * according to the law of Descent and Distribution in force in Kentucky at the time of his death."

■ Doubtless the testatrix had in mind her son's family or his lineal descendants.

This is underlined by the codicil, which was executed thirteen days before her son married. The trial court ruled the provision of the codicil was too indefinite to be valid, as the collateral kindred contended in order to be able to challenge the adoption. We need not pass on that issue. The point is that the testatrix in this negative manner at least expressed her will that the estate should not go to her son's collateral kin in default of "heirs." She did not say that the estate should go to "my heirs," or to "his children," or to "his issue." Although "heir" and "heir at law" are used indiscriminately as synonyms, the word "heir" alone denotes that the ancestor has already died, while the suffix "at law" adds an expectant feature of one's anticipated statutory position or refers to one who is considered as still living.

The testatrix adopted the law of devolution and succession to intestate property. For final distribution she designated whoever might be entitled to her son's estate under the statutes in effect at the time of his death. The statutes gave the net personal estate of a decedent to a child or children and widow proportionately. KRS 391.030, 392.020. The statute, KRS 199.530, provides that an adopted person "shall be considered, for purposes of inheritance and succession and for all other legal considerations, the natural, legitimate child of the parents adopting it."

In response to the argument that the mother did not place it within the son's power to direct the course of the estate out of the blood stream by adopting an heir, it may be said that had he wished, he might have refrained from marriage and permitted the estate to go to the charities as directed in the codicil.

██ So much as to the construction of the will. We now come to the question of the validity of the adoption by the son of his wife in order that she might acquire the trust estate as his heir at law by virtue of the adoption.

██ ██ Adoption, in the sense of voluntarily taking a child of other parents as one's own child, is of ancient origin. The history and development of adoption reflect its use as the means of establishing not only the social relationship of parent and child but as well its use for the exclusive purpose of making the adoptee eligible to inherit property the same as one born to a party in lawful wedlock. Adoption was practiced by ancient Egyptians and Hebrews. When Joseph went up out of Egypt to the land of Goshen to visit his sick father, Jacob, he took with him his two sons, born of an Egyptian mother, and presented them to his father. Jacob adopted them, and Manasseh and Ephraim took their stations and heritage as Jacob's heirs in the place of Joseph, and their descendants became two of the twelve tribes of Israel. Genesis, 41:50, 52; 48:5, 14–20. Years afterward Moses, the Hebrew child, was adopted by the Egyptian Pharaoh's daughter as her own son. Exodus 2:10. Adoption was a familiar Roman custom; and the modern law came to us from the civil law, for the practice was unknown in the English common law. Power v. Hafley, 85 Ky. 671, 4 S.W. 683. Hence, adoption has always been and is now strictly a statutory creation.

The validity of the adoption in this case is, of course, to be determined by the statute in effect at the time the judgment of adoption was rendered on March 18, 1941. The statute, an Act of 1940, Chapter 94 reads:

"(1) Any adult person who is a resident of Kentucky may petition the county court of the county of his legal domicile for leave to adopt a child or another adult * * *

"(2) Any person may be adopted after arriving at the age of twenty-one years as well as children before reaching that age."

The current statute, KRS 405.390, an Act of 1950, Chapter 120, is in substantially the same language.

It is important to note that the statute is unrestricted and unqualified. It authorizes any adult person to adopt any person of any age. It, therefore, authorizes any adult person to make for himself an heir, irrespective of age. It is the apparent absurdity of the adoption by a man of his wife that is startling. But may the court write an exception into the statute because of it?

We do not know of a case of adoption so bizarre as this. But there have been other odd adoptions which, like this one, were not to establish the social relationship of parent to child, such as the adoption of a very young person, but for the purpose of establishing a purely legal relation or status having the objective of making the adopted person eligible to inherit an estate.

In Greene v. Fitzpatrick, 220 Ky. 590, 295 S.W. 896, 897, a wealthy bachelor adopted a married woman who had been his stenographer for many years. After his death his collateral heirs attacked the judgment of adoption. One of the grounds of attack was that the adoption was founded on an illegal consideration or, as expressed by Judge Thomas, "lived in a state of concubinage," which fact was concealed from the court. The petition in that respect was held not to state a cause of action. In the course of the opinion we observed that the fact that the adoptee was a married woman was no obstacle to the adoption; that the statute of adoption "does not contemplate that the adopted heir shall be an infant, but, on the contrary, he or she may be an adult." Continuing:

"* * * In fact, an adoption solely for the purpose of inheriting does not have for its purpose, nor is it followed by, any change in social or domestic relationship of either party to the transaction, but has for its purpose and effect only the bestowal on the adoptee the right of a natural heir to inherit undisposed of property from the adopted ancestor. * * *"

In Collamore v. Learned, 171 Mass. 99, 50 N.E. 518, a man who was seventy years old adopted three other men, aged 43, 39, and 25 years respectively. After his death, suit was filed to set aside the adoption. One of the arguments was: "'It is not competent under the adoption law for a person in the senile age of life to adopt persons in the prime and vigor of life.'" This was disposed of by Judge Holmes (later of the Supreme Court) by the laconic decision, "Such is not the law." The other ground was: "'It is not competent, under the adoption law, for an adoption to be made for the purpose of operating simply as, and to take the place of, a last will and testament.'" The court found that it was an important purpose of Collamore to make the adopted persons his heirs at law with a view of taking away any inducement that some of those who otherwise would have been his heirs might have to oppose his will. Said the court: "This motive is a perfectly proper one, and, if it were bad, it would not affect the validity of the decree" of adoption.

In Brock v. Dorman, 339 Mo. 611, 98 S. W.2d 672, 673, a father devised a life estate in land to a son "'during his natural life and after his death to go to his heirs.'" In later years the son adopted a woman 43 years old who was of no kin. Denying various contentions of those who challenged the adoptee's right to take the estate after the death of the life tenant, the court pointed out that the testator did not provide that the land should go to his own heirs when the life estate was terminated but to the son's heirs and that the adopted woman was an "heir" of the life tenant. The contention of subterfuge to defeat the will so as to take the land away from the natural heirs who would have received it under the will if there had been no adoption, and the contention that since the life tenant could not have accomplished the result by will or deed, he should not be allowed to do it indirectly, were brushed aside by the court as unsubstantial. The court noted that "testator was content that the remainderman

should be the person upon whom the laws on descents would cast inheritance from the life tenant, when the life tenant died," and that it was "wholly immaterial how, or because of what events, actions, or occurrences such remainderman came to be within that designation [heir of the son]."

We revert to our adoption statute. The courts are bound by statutory law as written and cannot write into it an exception which the legislature did not make. Mastin v. McLain, 204 Ky. 504, 264 S.W. 1069; Falls Branch Coal Co. v. Proctor Coal Co., 203 Ky. 307, 262 S.W. 300, 37 A.L.R. 1172; Bank of St. Helens v. Mann's Ex'r, 226 Ky. 381, 11 S.W.2d 144, 145. However just and desirable it may sometimes be, the courts may not supply an omission and thereby give force and effect to a statute when applied to a subject about which nothing whatever is said, or when to all appearances it is a condition not in the minds of the legislature at all. This, of course, is not the same as supplying words where necessary to obviate inconsistency or to complete the sense of a statute. Commonwealth v. Lipginski, 212 Ky. 366, 279 S.W. 339; Barker v. Stearns Coal & Lumber Co., 287 Ky. 340, 152 S.W.2d 953. Nor may a statute be disregarded or amended for the purpose of preventing an evil consequence that may follow from the only interpretation of which it is susceptible. Thus, the court could not hold that a wife had forfeited her statutory rights as a widow by the fact that she had killed her husband. Eversole v. Eversole, 169 Ky. 793, 185 S.W. 487, L.R.A.1916E, 593. So, the fact that the adoption statute as it is written opens the door to an incongruous use is no reason why or authority for the court interposing an exception or qualification which the legislature did not put into it. It cannot be said, as the appellants contend it should be said, that the adoption for the sole purpose of making an heir is outside the scope of the adoption law.

It is ably argued by the appellants that the adoption of a wife is void as against public policy. Public policy is a vague and indefinite term and is incapable of accurate and precise definition. The public policy of a state is to be found in its constitution and statutes, and it is only in the absence of any expressed or implied declaration in these instruments that it may be declared by judicial decisions. If the legislature has spoken clearly and constitutionally, the courts may not substitute their own ideas of public policy. So, what is clearly authorized by a statute cannot be nullified as being against public policy. True, such policy retains a place in the process of statutory interpretation, and in cases of doubtful legislative meaning disregard of such policy will not be attributed to the law making power. Sutherland, Statutory Construction, §§ 5901, 5902; 50 Am. Jur., Statutes, § 300; Kentucky State Fair Board v. Fowler, 310 Ky. 607, 221 S.W.2d 435.

The appellants would bring the present case within that rule of interpretation. They submit that the state's interest in and control of its social institutions deny the right of this adoption since it vitiates the common law unity of husband and wife, and that as a man cannot marry his adopted child, the reverse must be the same, that a man cannot adopt as a child a woman whom he has married.

A husband and wife are indeed united in wedlock, yet they remain two distinct personalities. Adoption for the purpose of inheritance of an estate does not change them or unite them by nature. Public policy might be invoked in case of a marriage between the parties after adoption, but we are concerned here not with policy as it pertains to marriage after the status has been created, but, as stated, concerned only with the clear, unqualified statutory authorization of adoption.

The suggestion or implication that public policy is offended by interpreting the statute so that it sanctions such an adoption rests on the idea that it results in an incestuous relation. This point disappears when it is noted that the statute, KRS 402.010, declares to be incestuous only marriages between persons who are of "kin to each other by consanguinity" in specified degrees. KRS 436.060 does define incest to embrace a "child;" but this has been construed as embracing only one of blood relationship, so that the crime is not committed by sexual relations between a stepfather and stepdaughter. Burdue v. Commonwealth, 144 Ky. 428, 138 S.W. 296. It has been held in Mississippi that an adopted child is not a "daughter" within an incest statute and that the court by way of construction could not ingraft such a meaning or application into the statute. State v. Lee, 196 Miss. 311, 17 So.2d 277, 151 A.L.R. 1143.

Neither the cleverness of the scheme of Graybill to establish his wife as the ultimate beneficiary of the trust estate, nor the incongruity of the legal status of parent and child, can lead the court away from the fact that the adoption was within the authorization of the statute. It follows, therefore, that Mrs. Graybill became and was the sole heir of the life beneficiary of the trust—not by flesh and blood, but an heir by operation of the law.

The judgment is affirmed.

STEWART, CAMMACK and MONTGOMERY, JJ., dissent.

MONTGOMERY, Judge (dissenting).

I respectfully dissent from the majority opinion herein because I feel that the rule stated in Copeland v. State Bank & Trust Co., 300 Ky. 432, 188 S.W.2d 1017, 1023, is more in accord with the intent and purposes of our statutes concerning adoption and descent and distribution. The rule as stated therein is:

"* * * when provision is made in a will for the child of some person other than the testator, an adopted child is not included, unless there is language in the will or circumstances surrounding the testator which make it clear that the adopted child was intended to be included; and the fact that the adoption was subsequent to the testator's death raises a grave presumption against an intention to include such adopted child. Generally the terms 'heirs' and 'issue', as well as 'children' and words of similar import in a will, refer to natural or blood relationships and do not include an adopted child in the absence of circumstances clearly showing that the testator so intended; and we perceive no reason for assuming that Harry Baylor Hanger contemplated that a child adopted by one of his own heirs at law should take upon the death of the adoptive parent."

The rule as stated was the law of this state for a long time until overruled in Major v. Kammer, Ky., 258 S.W.2d 506. The effect of the Copeland rule is that one adopted is not permitted to inherit or take from the estate of one not a party to the adoption proceeding. The right of inheritance is not a necessary incident to the relationship of adoption. 2 C.J.S., Adoption of Children, § 63 a, p. 452. Adoption effects a change of status between the parties to the adoption proceeding. The testatrix in the instant case was not a party to any adoption proceeding and the final disposition of her estate to one out of her blood line should not be permitted. Nothing could have been further from her intent than the result obtained therein by the perverted use of the adoption proceeding.

The majority opinion is wrong, in that it is against public policy to permit a wife to be adopted by her husband especially for the purpose of taking advantage of the

estate of a dead person. The general conception of adoption statutes is that they are for the purpose of creating a parent and child relationship, with certain healthy and beneficial results obtained thereby. By amendment, our adoption statute has been engrafted so that it is not restricted to children. The construction of the statutes in the majority opinion is such as is condemned in 1 Am.Jur., Adoption of Children, Section 63, page 664, as follows:

"But it does not follow that an adoption statute should be liberally construed to divert from its natural course the descent of property left by those who are not parties to the adoption proceeding. Consanguinity is so fundamental in statutes of descents and distributions that it may only be ignored by construction when courts are forced so to do either by the terms of express statute or by inexorable implication. To prescribe a course of descent which will take property of deceased persons out of the current of their blood, the legislature must use explicit and unmistakable language."

To the same effect is 2 C.J.S., Adoption of Children, 63 d, p. 455. See also § 57 a, p. 449.

The approval of the proceeding in this case sanctions the unsavory actions of the parties which, if not wrapped in the privilege of the adoption statute, would border on constructive fraud. It also creates the confusing problem of whether a wife who has been adopted may claim as widow or child, or both, in her husband's estate. It is no answer to say that the remedy is legislative. The remedy is to overrule Major v. Kammer and return to the rule of the Copeland case.

CAMMACK and STEWART, JJ., join in this dissent.