### INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, etc., et al., Appellants,

### v.

### Tazle C. HOLT, Appellee.

Court of Appeals of Kentucky.

Sept. 22, 1967.

Joseph S. Freeland, Paducah, for appellants.

Herbert Schultzman, Paducah, for appellee.

W. MAJOR GARDNER, Special Commissioner.

Appellee, an employee of Paducah Marine Ways, Inc., was a member of the appellant, International Brotherhood of Boilermakers, Iron Shipbuilders, Forgers and Helpers (hereinafter called "the union"), a labor organization.

Appellee and other members of the union who were employees of Paducah Marine Ways went on strike pursuant to a strike call issued and a vote by the union. Thereafter, the union paid appellee strike benefits of $30.00 per week until he returned to work, by which time he had received a total of $270.00 in such benefits. These benefits were paid under a provision of the union's constitution which reads as follows:

"Each member receiving strike benefits shall sign a note in duplicate, and such duplicate shall be forwarded to the International Secretary-Treasurer reading as follows:

'State ...... City ...... Date ......

If I ...... return to work for the employer against whom we are now on strike prior to the time that obligation to pay strike benefits has been terminated, I hereby agree to pay back to the Inter-

national Brotherhood the full amount of benefits received by me.

> '........................ Name
> .................... Address
> Register No. .............','"

Appellee executed such a note and delivered it to the union on September 10, 1962. Although the strike (and the union's obligation to pay strike benefits) continued until January 12, 1963, appellee returned to work for Paducah Marine Ways long before that time. The union demanded that he repay the $270.00 which he had received, but he refused to do so. The union brought suit to recover. On motion by appellee for a summary judgment the circuit court dismissed the action upon the pleadings and this appeal followed.

The parties agree that the only issues to be determined are (1) whether this contract is void as against public policy for the reason that it interferes with appellee's right either to engage in or refrain from concerted activities, and therefore, tends to prolong a labor dispute as well as to restrain and coerce appellee in violation of his rights under Section 7 of the National Labor Relations Act, and (2) whether appellee is a third party beneficiary of the termination agreement between the union and the employer wherein the agreement recites "and no new litigation will be instituted as a result of any acts growing out of the strike which have occurred prior to this date".

Section 7 of the National Labor Relations Act reads as follows:

> "Sec. 7. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that

such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8(a) (3)." (29 U.S.C. Sec. 157).

Counsel for both parties have been unable to find case authority directly in point. Counsel for appellant emphasizes the importance of requiring a party to a contract to abide by its terms while counsel for appellee insists that there is involved a matter of public policy which should outweigh all other considerations.

In Kentucky State Fair Board v. Fowler, 310 Ky. 607, 221 S.W.2d 435, this court restated the view that a court should proceed with caution in declaring a contract void as against public policy, saying:

> "It is only where the Constitution and the Statutes are silent on the subject that the Courts have an independent right to declare the public policy. Chreste v. Louisville Ry. Co., 167 Ky. 75, 180 S.W. 49, 52, L.R.A.1917B, 1123, Ann.Cas. 1917C, 867. Until the mind of man becomes conditioned to the point that it can reconcile the many different and varying disciplines of thought in respect to human actions and relations, the Courts should use extreme caution in declaring a transaction to be void on the ground that it contravenes public policy."

■ We cannot agree that the evil complained of by appellee is embodied in the contract. It must be conceded that a union may employ means of persuasion, within bounds, in an effort to hold the employees on strike. The real question is whether the union exceeded the proper bounds in the instant case. Again we find no authority covering the precise set of facts here involved. Appellee argues that it is to the public interest that strikes be settled as rapidly as possible. This may or may not be true. Many factors and considerations from the standpoint of the employer, the

employee, the union, and the general public would have to be weighed. In the present action these various factors and considerations have not been presented in order to support the motion for a summary judgment.

■ Appellee's main argument is to the effect that the contract imposes such an economic sanction upon appellee that it results in prohibited restraint and coercion. We do not find it so. In the first place he signed the contract voluntarily. In the second place he could continue on strike and receive the remunerations, or if he found it more advantageous (which he apparently did in this case) he could return to work. If appellee had continued striking to the end and the union defaulted with the weekly payments, could the union's refusal to pay be defended on the ground that the contract was void as against public policy? Counsel for appellee concedes that the contract would not contravene public policy if it provided for the withholding of payments until the strike was settled and that the employee would be paid only if he continued on strike. We can see no difference insofar as public policy is concerned. In either case it might be said the contract would tend to prolong the strike and it would in a sense place an economic sanction against the employee.

■ The contract is clear and unambiguous. Since it is not clearly against public policy we think it is enforceable. Kentucky State Fair Board v. Fowler, supra.

■ The appellee's contention that he was a third party beneficiary to the agreement terminating the strike is not helpful to him. Obviously, the contract was intended to settle disputes between the union and the employer and did not control controversies within the union or between the union and its members. Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must at least show that it was intended for his benefit.

It was not so intended. Standard Oil Co. of New Jersey v. National Surety Company, 234 Ky. 764, 29 S.W.2d 29.

The judgment is reversed with direction to the circuit court to enter judgment in favor of appellant.

All concur.